ROBERT H. GOLDSMITH et al.

*vs.*

UNITED STATES FIDELITY AND GUARANTY COMPANY.

*Insurance Commissions—Unlicensed Broker—Evidence.*

Plaintiffs, authorized to place certain insurance in behalf of a city, having agreed with defendant, in consideration of commissions to be paid them, to place it with defendant for the terms of the existing (mayoralty) administration only, could recover commissions on such insurance issued by defendant to the city during a subsequent administration, although their original contract with defendant was unenforcible because plaintiffs had, at that time, no license to act as insurance brokers, they having, after the end of the first administration, received such commissions for several years, and having in the meanwhile procured a license, and their authority to place insurance in behalf of the city not having been revoked.

pp. 69-75

In an action to recover the commissions, under such circumstances, it was error to exclude a question asked of one of plaintiffs as to whether their authority to place insurance in behalf of the city was ever revoked. p. 76

*Decided January 11th, 1922.*

Appeal from the Baltimore City Court (STANTON, J.).

Action by Robert H. Goldsmith and Thomas M. Dell, trading as Goldsmith & Dell, against the United States Fidelity and Guaranty Company, for commissions. From a judgment for defendant, plaintiffs appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*A. Seymour O'Brien* and *William J. O'Brien,* for the ap-
pellants.

*J. Kemp Bartlett, Jr.,* with whom were *J. Kemp Bartlett*
*and Bartlett, Poe & Claggett* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

Goldsmith and Dell, the appellants, insurance agents and
brokers of Baltimore City in the year 1911, secured from the
city administration the business of placing the surety bonds
of the employees of the tax collector's office.

After some negotiations with the appellee company, it was
agreed that the latter should write the insurance and that the
appellants should receive, as commissions for placing the in-
surance with it, twenty per cent of the premiums received by
the appellee.

The first year of the insurance commenced on the 1st day
of October, 1911, and for that year the appellants were paid
the commissions agreed upon, but on the 13th day of Septem-
ber, 1912, before the expiration of the first year, the appellee,
through its manager, Albert H. Buck, wrote the appellants
saying:

> "Confirming your conversation with our Mr. Steele,
> I beg to advise you that this company will pay you a
> commission of 15 per cent. annually on the surety
> business of the City Tax Collector's office during the
> present administration. We will attend to all details
> incident to the collection of premiums and will for-
> ward you our check covering the commission in due
> course."

The modification of the original agreement was accepted
by the appellants and for several years thereafter, to and
including the year 1916, fifteen per cent of the premiums re-
ceived by the appellee was promptly paid by it to the appel-
lants; but prior to the insurance year commencing with the
1st day of October, 1917, the appellants were told by Mr.
Riggs, of the firm of Riggs, Rossman & Hunter, insurance

agents of Baltimore City, and special agents at that time of the appellee, that the appellee would not pay to the appellants any commission for the ensuing year, and suggested that Mr. Goldsmith, of the firm of Goldsmith & Dell, with whom the conversation was had, should see Mr. Cowden, deputy insurance commissioner, and he would find out from him that they were not entitled to any commissions. A conference was then had with Mr. Cowden, which resulted in the appellee paying to the appellants commissions for the ensuing year. The record does not disclose the ground upon which the appellee at that time refused to pay said commissions.

Some time prior to the insurance year commencing October 1st, 1918—the exact date is not given—Mr. Goldsmith had a conversation with Mr. Riggs, of said firm of Riggs, Rossman & Hunter, and was told by him that the appellee would not pay the commissions for said last named year, unless the appellants took out a license as insurance brokers, as required by the statute. It was then suggested by Mr. Goldsmith that his firm be permitted to act as agent for the appellee in the particular transaction, and thereby be relieved of the expense of taking out a broker's license, the cost of which was much greater than an agent's license. Mr. Riggs declined to accept the proposition unless the appellants would give the appellee their entire business. This Mr. Goldsmith declined to do. On the 21st day of September, 1918, John R. Bland, president of the appellee company, wrote to the appellants, saying:

"Because of changed conditions and requests received from those in authority, you are notified that no commissions will be allowed on bonds received by this company covering officers and employes of the City Tax Collector's Department.

"While we regret to be obliged to send this notice, we trust you will understand we have no other alternative.

"This is to take effect beginning October 1st, 1918, and will apply to business for the year beginning October 1st."

On the 23rd of September, the appellants answered Mr. Bland's letter to them. In their answer they called the appellee's attention to its letter of September 13th, 1912, in which it agreed to pay the commissions therein stated, and also to the disagreement between them arising out of its refusal to pay the commissions for 1917, and the result of said disagreement.

The record does not disclose any further correspondence between the appellants and Mr. Bland, but, on the 1st day of October, the appellants took out a license permitting them to act as insurance brokers until the 1st day of May thereafter (1919), when by the statute (Chapter 257 of the Acts of 1916; section 218, article 23 of the Code, vol. 4) the license expired.

After taking out said license, the appellants, on the 9th day of October, 1918, wrote the appellee, asking it to send to them a list of the employees in the tax collector's office insured by it for the year commencing October 1st, 1918. This letter is not in the record, but on the 11th day of October, 1918, the appellee, through John N. Richardson, superintendent of its official bond department, replied to said letter saying:

"We have your letter of October 9th, asking for a list of the employees of the City Tax Department. Kindly take up this matter with Messrs. Riggs, Rossman & Hunter, Inc., our city representatives, who will give the matter attention."

As directed in the above letter, the appellants on the 14th day of October, 1918, wrote Riggs, Rossman & Hunter, saying:

"Please send us the usual list of the bonds for the employees of the City Tax Department, as we wish to enter them on our books, and oblige,"

In reply to this letter, Riggs, Rossman & Hunter, on the 15th day of October, 1918, wrote appellants saying:

"Acknowledging your letter of the 14th inst., we must advise that the City Tax Collector has instructed us to credit this business to another account, and we will, therefore, be unable to give you the data requested."

On the 15th day of April, 1919, the suit in this case was brought by the appellants against the appellee to recover said commissions.

The declaration, as originally filed, contained but one count, which was upon the contract or agreement consisting of the letter of the appellee to the appellants, dated September 13th, 1912, and the acceptance by the appellants of the offer therein contained; but later an additional count was filed, by leave of the court, to recover commissions upon the insurance procured by the plaintiffs for the appellee for the year beginning October 1st, 1918.

At the trial of the case the facts that we have stated were produced in evidence, together with the further fact that, when William C. Page, tax collector of the city from October 1st, 1916, to May 1st, 1920, was called to the stand, he denied the statement made in the letter of Riggs, Rossman & Hunter to Goldsmith & Dell, dated October 15th, 1918, that he had instructed them to credit the business to another account, saying that he had given no instructions whatever to any one as to crediting the commissions arising from the placing of the bonds of the employees of the city tax collectors office.

At the conclusion of the plaintiffs' case, a prayer offered by the defendant, which asked that a verdict be directed for the defendant, because of the want of evidence, legally sufficient under the pleadings to entitle the plaintiffs to recover, was granted.

In the course of the trial one exception was taken to the court's ruling upon the evidence. This, and the exception taken to the court's ruling upon the prayer, are the only exceptions found in the record.

It is the contention of the defendant that the plaintiffs are barred from recovery because of the fact that, until the 1st day of October, 1918, they were without an insurance broker's license enabling them to act as insurance brokers.

The statute (section 218 of article 23 of the Code) provides that any one who

"for compensation, acts or aids in any manner in negotiating contracts of insurance or reinsurance, or placing risks or effecting insurance or reinsurance for a person other than himself, and not being duly appointed solicitor, agent or officer of the company in which such insurance or reinsurance is effected, * * * shall be deemed an insurance broker within the meaning of this article";

and, in the same section and article, it is provided that

"all licenses for the purposes of conducting the occupation or business of an insurance broker or broker's solicitor, shall be granted by the Insurance Commissioner of the State of Maryland, and all such licenses granted by said commissioner shall expire on the 1st day of May thereafter."

In section 220 of said article it is also provided that

"any person who shall use or exercise within this State the business or occupation of an insurance broker, * * * without having procured a license therefor, as required by sections 218, 219, 219A and 219 B of this article * * * shall be subject to a penalty of $500.00 for each such offense."

This statute was before this Court for construction in the case of *Goldsmith* v. *Manufacturers' Liability Insur. Co. of New Jersey,* 132 Md. 283, in which we held that a broker's insurance license was not required for revenue alone, but also for the protection of the public against the wrong doing, imposition and fraud of persons engaged in such business, and that any insurance contract entered into by an unlicensed

broker in the course of his business could not be enforced by him. The opinion in that case was handed down on February 23rd, 1918.

It is shown that the plaintiffs were licensed insurance brokers on and after October 1st, 1918, to May 1st, 1919, but not before that time, and the decision in this case will hinge upon whether they, as holders of such license for the period mentioned, are, upon the facts of the case, entitled to have their claim for commissions enforced.

The evidence discloses that early in the first administration of Hon. James H. Preston, Mayor of the City of Baltimore, the business of insuring the employees of the tax collector's department of the city was entrusted to the care of the plaintiffs, that is to say, authority was given to them to place that insurance with such insurance company or companies as they might select, and the evidence discloses that they selected the defendant. It seems that this authority to them emanated from the mayor, and upon the resignation in 1911 of Mr. Numsen, who was tax collector in the early part of Mayor Preston's first administration, the officials of the defendant company became apprehensive as to whether the authority of the plaintiffs would thereafter be retained by them, and, moved by that apprehension, Mr. Bland called upon plaintiffs, and he, with Mr. Goldsmith, went to see the mayor, and they were assured by him that the plaintiffs would not be disturbed in their authority to place the insurance.

In the following year, 1912, Mr. Goldsmith again called upon the mayor, this time because told by Mr. Bland that his company would not pay the plaintiffs commissions for the succeeding year, saying he "had made different arrangements with his firm," and as a result of his conference with the mayor, the agreement contained in the defendant's letter of September 13th, 1912, was entered into between them. The terms and provisions of this agreement were complied with, not only during the first administration of Mr. Preston—the limit of time fixed by such agreement—but continued there-

after until the year 1917, when the defendant again refused to pay commissions for the succeeding insurance year. The grounds for its refusal at that time are not disclosed by the record, but whatever they may have been, the plaintiffs were told to see Mr. Cowden, deputy insurance commissioner, which Mr. Goldsmith did, and as a result of his conference with him the relations of the plaintiffs and defendant were resumed and the commissions paid for that year.

The defendant's reason for its refusal to pay commissions at that time may have been the one they assigned a year later —that the plaintiffs were not licensed brokers and not entitled, so long as they remain unlicensed brokers, to receive the commissions.

At this time, however, the question whether a contract made by an unlicensed insurance broker or brokers was an enforcible one was pending in the court, and the decision in *Goldsmith* v. *Manufacturers' Liability Insur. Co. of New Jersey* had not been made.

There was at no time, so far as the record discloses, any denial made by the defendant of the fact that the plaintiffs were authorized by those in power to place this insurance, until the plaintiffs were told by Riggs, Rossman & Hunter in their letter of October 15th, 1918, after the contracts of insurance had been executed, that the city tax collector had instructed them to credit the business to another account, which statement William C. Page, collector at that time, denied when upon the stand. It was under this authority that the insurance of previous years had been placed, and, the commissions paid by the defendant to the plaintiffs, and it was this same authority that was recognized by Mr. Riggs when he said to Mr. Goldsmith that commissions for the year 1918 would not be paid to plaintiffs *unless they took out an insurance broker's license,* from which statement the plaintiffs were entitled to infer that if they did take out such license the commissions would be paid to them. The plaintiffs took out a license that became effective from the first of

the succeeding insurance year, commencing October 1st, 1918, the time when the next annual insurance was to be placed.

It is true that Mr. Bland wrote the plaintiffs on September 21st, 1918, that commissions would not be paid them for the succeeding year, which commenced on October 1st, 1918, stating therein that such refusal was "because of changed conditions and requests received from those in authority." It is not shown, however, from the record, whether this letter was written before or after the conversation between Messrs. Riggs and Goldsmith, in which the former told the latter that the commissions for said year would not be paid unless the plaintiffs took out an insurance broker's license, but it may be reasonably inferred that the conversation was after the writing of the letter, for in the letter the specific ground of refusal is withheld, whereas in the conversation the ground of the refusal is specifically stated.

The record shows no further communication between the parties after the letter of Mr. Bland and the answer thereto, or the conversation between Messrs. Riggs and Goldsmith, whichever last occurred, until after October 1st, 1918, the time when the new annual insurance was to become effective, and at which time the plaintiffs became licensed insurance brokers.

In this case the plaintiffs had insurance which they were authorized to place with whom they might select. They entered into a contract with the defendant, as shown by defendant's letter of September 13th, 1912, and their acceptance of it, to place that insurance with the defendant for and during the term of the then "present administration," which expired long before the controversy arose in this case.

The placing of said insurance thereafter was from year to year, and the consent of both parties was required thereto for the renewal of the insurance at each succeeding year. Either could have refused to continue it.

At the expiration of the insurance year of 1917, new insurance was to be issued for the year 1918, and this, it seems,

was done in the way of renewal, without consultation and conference with the plaintiffs, as would appear from the record, but, as their authority had not been revoked, as shown by the evidence, it would thus seem, upon the facts stated, that the plaintiffs were entitled to their commissions thereon upon their approval of the contract executed by the defendants when the same became effective, if at such time they were licensed insurance brokers, which the record shows they were.

The court below, we think, erred in granting the defendant's prayer.

This brings us to the exception upon the evidence. Mr. Goldsmith was asked "if the authority conferred upon the plaintiffs to place the insurance was ever revoked, not only by the mayor, but by anyone." This question the court refused to permit the witness to answer. In doing so we think the court erred, as it was in our opinion a pertinent inquiry.

Because of the errors mentioned, the judgment of the court below will be reversed.

> *Judgment reversed and a new trial awarded,*
> *appellee to pay costs.*