MAYOR OF THE CITY OF HAGERSTOWN *v.* LYON

[No. 82 (Adv.), September Term, 1964.]

224

*Decided, per curiam, June 16, 1964.*
*Opinion filed September 21, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*H. Warren Buckler,* with whom was *Edward Oswald, Jr.,* on the brief, for appellant.

*David W. Byron* and *Franklin L. Morgal,* with whom were *Bushong, Byron & Moylan* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

We, heretofore, affirmed the action of the trial judge herein by *per curiam* order.

The appeal was taken by the Mayor of Hagerstown from an order of the Circuit Court of Washington County granting a petition for declaratory decree brought by the appellee, a resident of the City of Hagerstown, in his own behalf and in behalf of all taxpayers and voters in said City. The order declared that: the Mayor did not have the power to veto a charter amendment resolution passed by a majority of the Council of Hagerstown pertaining to an election to be held relative to the sale, other disposition of, or lease of the Municipal Electric Light Plant; the said resolution having been passed by a majority of the Council, the posting thereof and a publication of a summary of said resolution complied with the intent, purpose and substantive provisions of the Code (1957), Article 23A, Sections 13-17; the said charter amendment will become a valid amendment to the Charter of Hagerstown unless it is defeated on referendum as provided in Article 23A; the clerk make an amendment to the minutes of one of the meetings of the Mayor and Council, not here contested.

The case may be determined by answering these questions:
1. Was the trial court correct in holding that the enactment of the charter amendment resolution in

question is governed solely by State law and need not be enacted as an ordinance subject to mayoral veto in accordance with the procedure set out in the Hagerstown Charter?

2. Was the lower court correct in holding that the Mayor of Hagerstown is not a member of the legislative body of that City within the meaning of Code (1957), Article 23A, Section 13 (a) ?

3. Was the charter amendment resolution invalidated because it was not presented to the Council in the form provided in Section 17 (a) ?

No question is raised relative to a failure to join possible necessary parties. Cf. *Pressman v. D'Alesandro,* 211 Md. 50. And no contention has been made that the resolution has not been registered in accordance with Section 17 (f).

At a meeting of the Mayor and City Council of Hagerstown duly called and convened on February 13, 1964, at which the Mayor and all five members of the Council were present, a motion was presented by a member of the Council proposing the passage of a resolution amending Section 81 of the Hagerstown City Charter with respect to the procedure to be followed in connection with a referendum on "a proposed sale, lease or other disposition" of the Municipal Electric Light Plant, which resolution, including the summary thereof, was read in its entirety to the other members of the Council.

At said meeting, the Mayor publicly stated that he possessed the right to veto the proposed charter amendment and refused to permit a vote on said amendment until the charter amendment resolution was amended to include the following: "preserving the right of the Mayor to exercise his right to veto if he has such power." The amendment was added to the resolution and the resolution was then passed by a majority vote of the members of the City Council.

After the passage of said resolution, the Mayor refused to publish the summary or post the resolution as provided for in Section 13 (d) and (e) of Article 23A of the 1957 Annotated Code of Maryland. A complete and exact copy of the resolution containing the proposed charter amendment was posted by

John H. Conrad, City Clerk of Hagerstown at City Hall in Hagerstown, Maryland, on February 15, 1964, and remained posted for at least 40 days following its adoption according to the requirements of Section 13 (d) of Article 23A of the 1957 Annotated Code of Maryland. A fair summary of the proposed charter amendment as passed by the Council on February 14, 1964, was published in the Morning Herald and Daily Mail on February 19, February 26, March 4 and March 11 by David W. Byron and Franklin L. Morgal according to the requirements of Section 13 (e) of Article 23A of the Annotated Code of Maryland, 1957 Edition.

Under date of February 18, 1964, the Mayor of Hagerstown, purported to veto the said charter amendment resolution and filed his written veto message with the City Clerk for presentation to the Council at its next regular meeting, which veto message was read at the next regular meeting of the Council.

Thereafter, a petition for declaratory decree was filed by Charles D. Lyon as a citizen, taxpayer and voter of Hagerstown on his behalf and on behalf of all other taxpayers and voters of Hagerstown seeking a judicial determination of the question as to whether or not the Mayor had the right to veto this resolution and of the general validity of said amendment. The Mayor and City Clerk, filed answers; briefs were filed by both parties and a hearing was held before the Circuit Court for Washington County on the questions thereby presented. Thereafter, the Circuit Court by Chief Judge McLaughlin passed the order appealed from.

## I and II

Both sides agree that the statute primarily controlling the answers to these questions is Code (1957), Article 23A, Section 13 (a). We agree as indicated by the decision of this Court in *Hitchins v. City of Cumberland*, 208 Md. 134. The section reads as follows:

> "(a) *Initiation of amendment by resolution.* The legislative body of the municipal corporation, by whatever name known, may initiate a proposed amendment or amendments to the municipal charter, by a resolution which, except as otherwise specified in this

subtitle, is ordained or passed as in the usual course of considering resolutions in the government of the municipal corporation, by a majority of all the persons elected to the legislative body."

Appellant argues here that the word "resolution" used three times in the section is synonymous with, and really means, "ordinance." He points out that two verbs, "ordained or passed," are used, and states that "ordained" is unusual to describe the passage of a resolution. He argues further that whether an amendment proposal measure be called a "resolution" or an "ordinance," it constitutes legislation and must be adopted in accordance with the usual "legislative procedure and formality of the municipality."

The question gives us no great difficulty. This Court in *Hitchins* held that the provisions of Sections 11-18 of Article 23A occupy the "whole field" of amendments to charters of home-rule municipalities; hence the answer to our present questions may be ascertained by a determination of the proper construction of Section 13 (a), without setting forth and considering in detail the provisions of the Hagerstown Charter relative to the passage of ordinances generally or charter amendments. The question now under consideration is not the same as that determined in *Reed v. President and Com'rs of Town of North East*, 226 Md. 229, wherein we held that a provision in a resolution, which required notice thereof in two named newspapers, did not invalidate the resolution, even though Section 13 only requires notice in one newspaper.[1]

---

1. It is indeed difficult to discern how appellant can hope to obtain relief under this heading. This Court held in Hitchins, supra, that Sections 11-18 occupied the whole field of amendments to charters. Nowhere therein is any provision granting Mayors the right to veto amendment resolutions. The general rule seems well established that Mayors of municipal corporations possess the veto power only when clearly granted by law. McQuillin, the Law of Municipal Corporations, Sec. 16.42; 62 C. J. S., Municipal Corporations, § 423 (b). If appellant derives no veto power under Sections 11-18, he must resort to Section 262 of the City Charter which, as we shall later see, expressly denies him the veto power over proposed amendment ordinances.

Section 13 (a) is short, and we think its meaning clear. The Legislature in this concise section not only uses the word "resolution" (or resolutions) three times but goes on to state that "except as otherwise specified" the "resolutions" shall be "passed as in the usual course of considering resolutions in the government of the municipal corporation, by a *majority of all persons elected to the legislative body* (italics ours)." In using the word "resolution" in Section 13 (a), the Legislature merely followed the same term used in Article XI-E, Section 4, of the Constitution of Maryland. Article XI-E was adopted in 1954, and Articles 23A and 23B of the Code were, in the main part, enacted in 1955 to implement, primarily, Section 4 of Article XI-E. The constitutional article as well as the statutory ones all arose from a concerted effort (as we shall point out later in more detail) to afford home-rule powers and authority to municipal corporations. A careful reading of these provisions convinces us the word "resolution" contained therein was advisedly and deliberately used. Two of the principal objectives attained thereby were to place the veto power of proposed charter amendment resolutions in the electorate (Section 13 [f], [g], and [h]), and, in those municipalities coming within the purview of Article 23B, to point out clearly that charter amendment "resolutions" were not subject to certain provisions relative to "ordinances" (cf. Article 23B, Sections 14 and 15). We reaffirm the Court's ruling in *Hitchins, supra,* and hold that the present appeal is controlled by the State law, Sections 11-18, Article 23A, and not by the provisions of the Hagerstown Charter dealing generally with the passage of ordinances; consequently, Chief Judge McLaughlin was correct in declaring that the Mayor had no right to veto the resolution involved herein. The Supreme Court of Errors of Connecticut reached a similar conclusion in the recent case of *Sloane v. City of Waterbury,* 183 A. 2d 839. However, this does not completely answer the two questions under discussion.

This brings us to a consideration as to whether the Mayor of Hagerstown is a member of the "legislative body" of that City within the meaning of said Section 13 (a); because if he be, there can be little doubt that the resolution was not passed by a majority vote of all the persons elected to the legislative

body of Hagerstown as expressly required by the section. Code of Public Local Laws of Washington County (1957), Section 262, provides that the Mayor shall preside at all meetings of the Council, and "in case of a tie vote of the *Council*, except in the passage of *ordinances*, shall have the deciding vote (all italics our unless otherwise noted)." It further provides that he shall "act in all respects as the Chief Executive or administrative officer of said City and shall have the right to veto all *ordinances, except ordinances proposing amendments* to the Charter. (Whether this latter provision is now in effect, in view of Section 13 (a), is a question we do reach at this point. Cf. *Hitchins, supra,* wherein a charter amendment "ordinance" was passed simultaneously with a charter amendment "resolution," and the ordinance was considered to be surplusage.) Section 266 of the Charter provides that all *ordinances* passed by the Council shall be sent to the Mayor for his approval or disapproval; if approved, the ordinance becomes law; if disapproved, it does not become law unless passed by a four-fifths vote of the *Council*. Because of the above duties and a few others, which we do not deem it necessary to detail, appellant argues that the Mayor is "in effect" a member of the "legislative body" of the City within the purview of Section 13 (a).

Chief Judge McLaughlin disposed of this contention in the following manner:

"The Respondents next advance the theory that the Mayor is an elected member of a *legislative body,* and this being so, a vote of four is required to make a majority to comply with Section 13 (a). Being a member of the legislative body supposedly stems from the fact that the Mayor has the power to approve ordinances and by so doing, in effect casts a vote, therefore, he is a voting member of a legislative body.

"This contention must fail unless the court were to adopt the first argument, namely, that an *amendment resolution* cannot be properly passed unless offered and considered by the Council as it would an ordinance, with the right of mayoralty veto. The Court has found no merit to the first argument and refuses

to adopt any further contention that the Mayor is a voting member of a legislative body.

"The citizens of Hagerstown are reminded that Home Rule legislation, as set forth in the provisions of Article 23-A was given years of study by various Commissions, Mayor and Council organizations, the Legislative Council and the Legislature of Maryland, before consideration was given to its passage. The Bill represents the final work product of the Maryland Legislative Reference Bureau, college specialists in government, noted lawyers, experienced city office holders and politicians. Careful thought, experience and wisdom are contained in the Act's provisions. Therefore, it is the Court's conclusion * * * that never would the Legislature have used the word 'resolution' so as to give any connotation of the word 'ordinance' any more than it would have meant to imply that the words 'legislative body' were to include members of the executive branch of government."

Also see 37 Am. Jur., *Municipal Corporations,* Sections 58 and 62, wherein it is stated:

"When the statutes provide that the mayor shall preside at meetings of the municipal council, he is a constituent part of the council for certain purposes, and he sits and acts therein, but he is not in any proper sense a member of the council, unless the statutes expressly so provide.

"The fact that a statute or charter gives the mayor the right to cast the deciding vote in case of a tie does not of itself make him a member of the council for any other purpose."

To the same effect, see 62 C.J.S., *Municipal Corporations,* § 388. And for an example of a statute which expressly made the Mayor a member of the Council see *City of Long Beach v. Pub. Service Comm.,* 164 N. E. 553 (N.Y.).

We also deem it a matter of substantial significance to note here that Section 5 of Article 23B, said Article providing a

proposed form for Charters of municipal corporations to be used in conjunction with Article 23A and being passed at the same session of the Legislature as Article 23A, provides: "All *legislative powers* of the town shall be vested in a *council consisting of five councilmen, who shall be elected * * *  (italics ours)." And Section 15 of Article 23B, states that after a veto by the Mayor of an *ordinance,* the same shall become law upon a favorable vote "of four-fifths of the whole council." After specifically providing in said Section 5 that *all legislative powers* shall be vested in a council of *five* councilmen and in Section 15 that the fractional vote to override a veto of an ordinance shall be *four-fifths,* the Legislature, we think, left little room for serious argument that it intended, in Section 13 (a), of Article 23A, to include the Mayor as a member of the "legislative body" elected by the voters of the City of Hagerstown, and, therefore, in order to initiate a proposed charter amendment thereunder, a majority of six (which would include the Mayor), rather than a majority of five was required. We hold that the trial judge was also correct in his ruling on this point.

### III

The last question arises in the following manner. Code (1957), Article 23A, Section 17 (a), in pertinent part, states:

> "In any proposal to amend an existing charter of a municipal corporation, the new matter, if any, to be added to the charter shall be indicated by being underscored or in italics and all matter to be eliminated from the existing charter, if any, shall be indicated in its proper place by enclosing such matter in double parentheses or in bold face brackets. Where the subject matter consists of an entirely new section or sections, the words of such new section or sections shall also be underscored or in italics, or contain some marginal or other notation to that effect."

The proposed resolution repealed all of what was Section 81 of the City's Charter and enacted a new Section 81 making three changes in the section as it had formerly read; namely,

that the notice of sale, lease or other disposal of the municipal electric light plant should contain a summary of the terms of the proposed sale, lease or other disposition; that a referendum relative to the sale, etc., might be submitted to the voters of Hagerstown at a special election called by the council as well as at the next general election as formerly provided; and if the proposed sale, etc., were approved by the voters, the Mayor and Council should make disposition of the property instead of it being discretionary with them as before.

The resolution as presented stated that it was a charter amendment resolution and recited the constitutional and statutory authorities for its presentation. Then its title in capital letters stated that its purpose was to delete former Section 81 of the Charter and to enact a new Section 81 in lieu thereof, with the three changes that we enumerated above. Section 1 of the resolution follows the above. This section sets forth in double parentheses former Section 81 in full and repeals the same. Section 2 of the resolution then adds a new Section 81 "to read as follows." Then the new section is set forth in full in italics. It consists of old Section 81 with the three changes noted above. Other sections of the resolution follow, but are not pertinent here.

From what we have said above, it seems apparent that Section 17 (a) was not literally complied with when the resolution was introduced; hence our present inquiry is to determine what effect this failure in form has upon the finished product under the circumstances. Appellant urges that the resolution, although passed by a majority of the Council, was invalidated completely thereby; but with this conclusion we are unable to agree.

Neither Section 17 (a) nor any other statute states the "penalty" for failing to have a charter amendment resolution in the prescribed form for presentation, or what effect, if any, such failure has upon the validity of the resolution if later passed. Counsel on both sides have been unable to discover any previous case directly in point, and we have found none. The quoted portion of Section 17 (a), in substance, is derived from Rule 31 of the Senate and House of Delegates of this State. The House Rule states that the Speaker may refuse to ac-

cept for introduction a Bill not drawn in conformity with the requirements of the Rule, but does not indicate that the validity of any Bill should be affected by such a failure if properly enacted. The obvious objectives of Section 17 (a) (as well as the Rules) is to permit those who are considering legislation to ascertain, quickly and easily, proposed new legislation or changes in the old. Whether or not the Mayor could have properly refused to entertain the resolution involved herein because of its form is a question we do not reach in this case. The resolution was presented to the members of the Council and, as stated above, a majority of them voted for it. No member made, or makes, any claim that he did not know what provisions were contained therein. We pointed out above in some detail the contents of the title to the resolution and the fact that the new Section 81, in its entirety, was contained in the resolution in italics. Judge McLaughlin took "judicial cognizance of the many newspaper articles concerning the possible sale of the Municipal Electric Light Plant and that this matter has been front page news and editorial material for at least two years. No member of the Council could have possibly been deceived as to the contents of the resolution, and the changes proposed by the amendment, nor has the public been misled." To hold under the circumstances presented here — where no fraud or trickery has been attempted or perpetrated, and no one has been misled—that the failure to comply literally with Section 17 (a) invalidated the resolution would, we think, place a premium on form and require a disregard of substance. We hold that the provisions of the quoted portion of Section 17 (a) do not constitute conditions precedent which must be strictly adhered to in order that a proposed and passed resolution may become effective. This ruling is dictated by common sense, reason and justice, and follows implications contained in previous holdings of this Court. See *Reed v. President and Com'rs of Town of North East, supra,* where Judge Sybert, for the Court, said: "The general principle applied in questions of this nature is that * .* * where municipal ordinances [ours is a resolution] have been enacted in pursuance of competent authority, they should be upheld by every reasonable intendment, and reasonable doubts as to the validity of an ordinance should be resolved

in its favor"; and *Dutton v. Tawes,* 225 Md. 484, (a case where there was a failure to make a substantial compliance with a notice provision of an Act) Judge Hammond, speaking for the Court, stated: "We think, however, that the record shows there was substantial, if not full, achievement of the purpose of the statute to acquaint the electorate fully with the law involved, and nothing to show that the deviation from the prescribed mode of acquainting, misled the voters or prevented, frustrated or interfered with a free, full and intelligent expression of the popular will."

The above are our reasons for affirming the action of the trial judge.