617 A.2d 1110

**Frank J. BLACKWELL**

v.

**CITY COUNCIL FOR the CITY OF SEAT PLEASANT.**

**No. 341, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 6, 1993.

Erroll D. Brown, Landover, argued for appellant.

John H. Morris, Jr., argued (H. Russell Frisby, Jr. and Venable, Baetjer and Howard, on the brief), Baltimore, for appellee.

Argued before BISHOP, CATHELL and MOTZ, JJ.

CATHELL, Judge.

Appellant, Frank J. Blackwell, mayor of the City of Seat Pleasant, appeals from an order of the Circuit Court for Prince George's County, presenting the following questions:

1.  Whether the general rule for amending a city charter as provided in the Maryland Annotated Code, Article 23A, sections 11 through 18 et seq. is mandatory.
2.  Whether compliance with sections 11 through 18 of Article 23A is a condition precedent which must be strictly adhered to in order that a proposed and passed resolution may become effective.

We address both questions together. We shall reverse the trial court.

### Statement of Facts

On July 9, 1990, the City Council for the City of Seat Pleasant (hereinafter City Council) passed resolutions 90–09 to "Repeal and Reenact Sections 905 (Direction of Mayor) of the Charter of the City of Seat Pleasant" and 90–10 to

"Repeal and Reenact Sections 403(a) and (c) of the Charter of the City of Seat Pleasant." Specifically, the resolutions rendered the position of the mayor merely ceremonial and placed supervision of the town government under an appointed Chief Administrative Officer. The last line of both resolutions stated that the amendments were to take effect on July 9, 1990, the same date that the resolutions were passed by the City Council.[1] The resolutions were signed

---

1. Prior to July 9, 1990, Section 905 read as follows:
   All departments, offices and agencies shall be under the direction and supervision of the Mayor. He shall appoint with Council consent an officer to assist him in administration of said departments, offices or agencies.
   As re-enacted by resolution 90–09, Section 905 would read as follows:
   All departments, offices and agencies shall be under the supervision of the Chief Administrative Officer. However, the Chief Administrative Officer may only with Council consent, appoint an officer to assist him in Administration of said departments, offices or agencies.
   Before July 9, 1990, Sections 403(a) and 403(c) read as follows:
   (a) Execution of ordinances; to be chief executive officer, etc. The Mayor shall see that the ordinance[s] of the City be faithfully executed and shall be the Chief executive officer and the head of the administrative branch of the City Government. In these capacities he shall be assisted by a chief administrative officer, as provided in Sections 701 and 702 of this Charter. The Mayor shall be responsible for the administration of the City's affairs to the Council and to the voters of the City.
   (c) Appointment, term and removal of department or agency heads. The Mayor with the consent of a majority of the Council shall appoint all department or agency heads. All department heads shall assume all powers and duties delegated to them by this Chapter. Duties, functions or powers of the department heads shall not be assigned or removed by members of the Council unless an extraordinary majority of five members concur at a regular or special meeting of the Council.
   As amended by resolution 90–10, Sections 403(a) and 403(c) would provide:
   Section 403(a) The Mayor: Powers and Duties
   The Mayor shall be the ceremonial head of the government and shall have such powers and perform such duties as may be prescribed by this Charter. The Mayor is authorized to sign and execute documents and to accept service of legal process on behalf of the City. The Mayor shall enforce the Ordinances of the city and perform such other duties which are not inconsistent with this Charter as may be required of the Mayor by the City Council.

and approved by Luther N. Arrington, Council President. There was also a signature line for appellant's approval of the resolutions, but appellant refused to sign them on the grounds that they were not introduced, adopted, and enacted in accordance with the procedural requirements for amending city charters as outlined in the Code. Specifically, appellant refused to sign the resolutions because the effective date was the same as the adoption date, and he believed that the resolutions were in improper form and were therefore invalid. He was correct.

For the same reasons, appellant refused to post and publish the resolutions as requested by the City Council. The City Council, in a separate action not at issue here (No. CAE 90–19139), successfully sought and received a writ of mandamus to compel the mayor to publish and post the resolutions. Thereafter, appellant had them posted, and he also had them published in the Prince George's Post for four weekly intervals beginning in the December 20, 1990 edition. The last sentence of both resolutions as enacted and as posted and published read: "And be it further resolved that this Amendment will take effect on the 9th day of July, 1990."

Subsequently, the City Council sought declaratory and injunctive relief to determine the validity of resolutions 90–09 and 90–10. Appellant then brought suit against the City Council challenging the validity of the charter amendments passed by resolutions 90–09 and 90–10. By order dated October 29, 1991, the trial court found that resolutions 90–

---

Section 403(c) Appointment of Department or Agency Heads
The Mayor shall within sixty (60) days of the occurrence of any vacancy in the position of City Treasurer, City Clerk, Chief of Police, or any department head submit to the City Council the name of at least one qualified person to fill such position.
In the event the name of such person is forwarded to the City Council within the time specified above, the City Council shall fill such vacancy by requiring the City Administrator to submit one name for such vacancy within thirty days after receiving a written request from the Council President. In any event the confirmation of such person shall be by vote of the majority of the Council.

09 and 90–10 were validly enacted but denied injunctive relief to the City Council.

After the resolutions were published, the city clerk forwarded the resolutions to the Department of Legislative Reference (hereinafter Legislative Reference) in Annapolis. Legislative Reference returned the resolutions to the city clerk indicating that they could not be effective as of July 9th because that was the date that they were passed by the City Council. Additionally, Legislative Reference informed the city clerk that the effective date of resolution 90–09 was August 28, 1990, and the effective date of resolution 90–10 was August 25, 1990.[2]

The city clerk on her own initiative and without direction from the mayor or the council changed the effective dates to August 28, 1990, and sent both resolutions back to Legislative Reference. She did not change the effective dates on the original resolutions at City Hall. The resolutions were never published in the newspaper indicating the August 25 and August 28, 1990, effective dates.[3]

### The Law

■ We first discuss the contents and purpose of Article 23A, sections 11 through 18, of the Annotated Code of Maryland (1990). The Maryland Legislature, by what is known as the "home rule" amendment, has provided a means for creating a local government in the form of a municipal corporation. Md. Const. art XI–E, § 3.[4] The

---

**2.** Apparently, Legislative Reference merely counted 50 days from the date the resolutions were passed. It is unclear why different effective dates were assigned to the respective amendments. In any event, the resolutions stated that they were effective months before the voters were notified that they had been passed and could petition them to referendum if they so chose.

**3.** We do not address the authority, or lack thereof, possessed by the city clerk to alter the official documents of the City of Seat Pleasant and/or to send altered official records to Legislative Reference.

**4.** Article XI–E, § 3 provides as follows:

Maryland Constitution confers authority on the General Assembly to amplify the procedures for adopting, amending or repealing a municipal charter. Md. Const. art. XI–E, § 4.[5] The General Assembly exercised that authority and enacted Article 23A of the Annotated Code of Maryland. Sections 11 through 18 of Article 23A provide the procedure for municipal charter amendments that is applicable to all municipal corporations. Md.Ann.Code art. 23A, § 11 (1990). An amendment may be initiated by either the legislative body or by a petition of 20% or more of the qualified voters of the municipal corporation. Art. 23A, § 12.

Section 13 establishes the procedure for a charter amendment that is initiated by the legislative body. Art. 23A, § 13. A resolution must be passed by a majority of all the persons elected to the legislative body. Art. 23A, § 13(a). The contents of the resolution "shall contain the complete and exact wording of the proposed amendment," prepared so that the sections amended are set forth as they would read in their future enacted form. Art. 23A, § 13(b). Sections 13(d)–(h) require that before the resolution becomes effective it must be posted in the main municipal building and published in a newspaper of general circulation in order to give the electorate notice of its statutory right to petition

Any such municipal corporation, now existing or hereafter created, shall have the power and authority, (a) to amend or repeal an existing charter or local laws relating to the incorporation, organization, government, or affairs of said municipal corporation heretofore enacted by the General Assembly of Maryland, and (b) to adopt a new charter, and to amend or repeal any charter adopted under the provisions of this Article.

5. Article XI–E, § 4 provides as follows:
The adoption of a new charter, the amendment of any charter or local laws, or the repeal of any part of a charter or local laws shall be proposed either by a resolution of the legislative body of any such municipal corporation or by a petition containing the signatures of at least five per cent of the registered voters of a municipal corporation and filed with the legislative body of said municipal corporation. The General Assembly shall amplify the provisions of this section by general law in any manner not inconsistent with this Article.

for referendum.[6]  The proposed amendment becomes effective on the fiftieth day after being passed,[7] unless a petition for referendum signed by 20% or more of the persons qualified to vote in the general elections of the municipal corporation, is received by the legislative body on or before the fortieth day after the resolution is passed.  Art. 23A, § 13(f) and (g); *Hitchins v. City of Cumberland,* 208 Md. 134, 142, 117 A.2d 854 (1955) (stating that a resolution passed becomes part of the charter unless a referendum vote is demanded).  If a petition for referendum that meets the statutory requirements is received, the legislative body is required to pass a resolution to hold a general or special election not less than forty days nor more than sixty days after the final passage of the resolution providing for the referendum.  Art. 23A, § 13(h).

The Court of Appeals, in addressing the purpose of Article 23A, held in *Hitchins:*

We think, however, that this is clearly a case in which the provisions of Sections 11–18 of Article 23A of the Code, enacted to implement Article XI–E, and particularly

---

**6.**  Sections 13(d) and (e) are particularly relevant to the case *sub judice,* and they provide as follows:

(d) Posting resolution.—The *mayor or other chief executive officer* of the municipal corporation, by whatever name known, shall give notice by *posting and publication* of any resolution which proposes an amendment or amendments to the municipal charter.  A complete and exact copy of the resolution containing the proposed amendment or amendments shall be posted at the town hall or other main municipal building or public place for a period of at least forty days following its adoption. . . .

(e) Publication of summary.—A fair summary of the proposed amendment or amendments shall be published in a newspaper of general circulation in the municipal corporation not less than four times, at weekly intervals *within a period of at least forty days after the adoption of the resolution* containing the proposed amendment or amendments.  [Emphasis added.]

**7.**  The words "adopted" and "passed," or variations thereof, are used interchangeably throughout Article 23A, section 13.  We note that both "adopted" and "passed" refer to "proposed" amendments; i.e., neither word indicates effectiveness until all the provisions of Section 13 have been met.

to implement Section 4 thereof, occupy the *whole field* of amendments to charters of municipalities ... and Sections 11–18 of the Code prescribe how such municipal corporations *shall* make amendments to their charters ... [T]hat the general provisions of the Code were meant to be all-inclusive is, we think, clear.

208 Md. at 143, 117 A.2d 854 (emphasis added). Cases involving amendments to municipal charters decided since *Hitchins* have relied on that case as establishing that sections 11 through 18 occupy the "whole field" of amendments to municipal charters. *Town of Glenarden v. Bromery*, 257 Md. 19, 24–25, 262 A.2d 60 (1970); *Mayor of City of Hagerstown v. Lyon*, 236 Md. 222, 228, 203 A.2d 260 (1964); 58 Opinions of the Attorney General 153, 156 (1973).

In *Mayor of City of Hagerstown v. Lyon*, the appellant challenged a provision declaring that he had no power to veto a charter resolution passed by the council. 236 Md. at 225, 203 A.2d 260. The resolution specifically stated that appellant could not veto an election to be held regarding the sale, lease or other disposition of the municipal electric light plant. *Id.* Appellant wanted to add a clause to the resolution stating that he had the right to exercise any veto power he may have regarding disposition of the plant. *Id.* Appellant refused to post the resolution in the main municipal building and to have it published in the newspaper. *Id.* at 227, 203 A.2d 260. The city clerk, however, at the request of two citizens, posted and published the resolution in accordance with article 23A, § 13(e). In commenting on the purpose of section 13(a), the Court opined:

Article XI–E was adopted in 1954, and Articles 23A and 23B of the Code were, in the main part, enacted in 1955 to implement, primarily, Section 4 of Article XI–E. The constitutional article as well as the statutory ones all arose from a concerted effort ... to afford home rule powers and authority to municipal corporations ... *[t]wo of the principal objectives thereby were to place the veto power of the proposed charter amendment resolutions in the electorate (Section 13 [f], [g], and [h])* ... conse-

quently, Chief Judge McLaughlin was correct in declaring that the Mayor had no right to veto the resolution involved herein.

*Id.* at 229, 203 A.2d 260 (emphasis added). *See Woelfel v. Mayor and Aldermen,* 209 Md. 314, 319, 121 A.2d 235 (1956) (stating that the purpose of section 5 of Article XI–E was to enable the General Assembly and a majority of voters of the municipality to apply a brake to excessive taxation, "and it is in harmony with the manifest general purpose of the Municipal Home Rule Amendment that municipalities should govern themselves in local matters").

In *Town of New Market v. Milrey, Inc.,* 90 Md.App. 528, 534, 602 A.2d 201 (1992), this Court upheld a motion for summary judgment in favor of Milrey because the Town Council failed to follow the statutory procedure for annexation as provided by Article 23A, section 19 in adopting an "amending resolution." Section 19 of Article 23A is very similar to section 13 in that it requires publication of a description of the property to be annexed and notice of a public hearing on the matter at least four times at weekly intervals in a newspaper of general circulation in the municipal corporation. Art. 23A, § 19(d). Section 19, like section 13, provides for a petition for referendum by residents of the area to be annexed, by residents of the municipality, or by the county governing body. Art. 23A, § 19(f)–(h). In holding that the amending resolution was invalid, this Court opined:

> [A]ny amendment must be passed in accordance with the procedural requirements of § 19, which contains a number of *procedural safeguards including the requirements of public notice, and a hearing.* People residing in the area to be annexed, as well as other citizens of the municipality, are given the right to petition for a referendum on the annexation resolution ... [a]ccurate information is critical in order for a citizen or other interested entity to exercise intelligently the rights of notice and participation provided by the statute ... [t]o permit the Town to give notice of, and hold a public hearing on, an

annexation resolution containing one description, and then to permit a subsequent resolution containing a different description, *without requiring the same notice and hearing procedures required of the former, would render the protection afforded under § 19 meaningless.* *Id.* at 541, 602 A.2d 201 (emphasis added).

Appellee in the case at bar asserts that the trial court committed no error because a charter amendment does not have to comply fully with section 17 in order to be valid.[8] Appellee relies on *Mayor of City of Hagerstown v. Lyon,* 236 Md. at 222, 203 A.2d 260, to support its contention that a "technical" violation of section 17 of Article 23A absent a showing of fraud, trickery, or that the public was misled, will not render a charter amendment invalid. Appellee's reliance is misplaced. In *Lyon,* an amendment initiated by the legislative body failed to set forth in double parentheses or bold face brackets a portion of a statute to be repealed in accordance with section 17, but it did set forth in italics the new portion of the statute. *Id.* at 233, 203 A.2d 260. Moreover, the title clearly stated that the purpose of the resolution was to repeal in its entirety the former section. *Id.* The Court, in commenting on the failure to comply literally with section 17(a), stated:

> The obvious objectives of Section 17(a) ... [are] to permit those who are considering legislation to ascertain, quickly and easily, proposed new legislation or changes in the old ... [w]e hold that the provisions ... of Section 17(a) do not constitute conditions precedent which must be strictly adhered to in order that a proposed and passed resolution may become effective ... *"[w]e think, however, that the record shows there was substantial, if not full, achievement of the purpose of the statute to acquaint the electorate fully with the law involved, and nothing to show that the deviation from the prescribed mode of*

---

**8.** Having been successful with this argument below, appellee continues in its brief before us to rely inappropriately on section 17. It shall not achieve the same result here.

*acquainting, misled the voters or prevented, frustrated or interfered with a free, full and intelligent expression of the popular will."*

*Id.* at 234–35, 203 A.2d 260 (emphasis added).

Relying on *Lyon,* the trial judge in the case *sub judice* found that the resolutions were valid because appellant failed to produce any evidence that the incorrect effective date on the proposed amendments misled any member of the City Council or the electorate about the nature of the amendments or the electorate's right to petition for referendum. The trial judge further found that the electorate was not misled because no petition was filed within forty days from the first publication in the newspaper on December 20, 1990. The trial court erred.[9]

The resolution on its face effectively misrepresented to the voters that the time for petitioning had already elapsed. The procedure used improperly abrogated the rights of petition established by section 13; thus, the failure of a petition to be filed cannot be evidence that no one was misled. Section 13 confers a right of referendum dependent upon the filing of a petition within forty days of a resolution's passage, not within forty days of a belated newspaper advertisement. Substantive violations of provisions that are at the heart of the amendatory process are not transmuted into "mere technical violations" solely because appellee wishes it.

---

**9.** Appellee relies on Maryland Rule 8–131(c) to argue that this Court may not disturb the trial court's factual findings unless those factual findings were "clearly erroneous." We hold herein that the resolutions were invalid because they did not comply with Article 23A, Section 13. The trial court's decision was based on the wrong section—section 17. Therefore, the "clearly erroneous" standard is inapplicable to the case at bar since the chancellor erred in applying the applicable law and there is no dispute as to factual matters that would affect our decision. *Davis v. Davis,* 280 Md. 119, 126, 372 A.2d 231 (1977); *Metropolitan Life Insurance Co. v. Promenade Towers Mutual Housing Corp.,* 84 Md.App. 702, 718, 581 A.2d 846 (1990); *Moon v. Weeks,* 25 Md.App. 322, 335–38, 333 A.2d 635 (1975); *Pappas v. Modern Manufacturing Co.,* 14 Md.App. 529, 538, 287 A.2d 798 (1972).

Appellee and the trial judge in the case *sub judice* overlooked the facts in *Lyon* that: (1) the posting and publication requirements of section 13(d) and (e) of Article 23A were complied with, in spite of the mayor's refusal to post and publish the resolution, and (2) the correct effective date was stated in the *Lyon* resolution as filed, posted, and published. *Id.* at 226–27, 203 A.2d 260. The voters in *Lyon* were fully informed of the resolution *before* it became effective and were given the opportunity to exercise their right to petition for referendum. *Id.*

█ In the present case, however, the electorate was clearly misled. They were informed of the resolutions for the first time on December 20, 1990, and the newspaper publication stated that the resolution was effective as of July 9, 1990. The notice as posted and published misled the voters because it stated that the amendment to the municipal charter had *already become effective.* As previously stated, an amendment initiated by the legislative body is not effective until it is: (1) posted, by a complete and exact copy, for at least forty days following its adoption; (2) a fair summary of the proposed amendment is published in a newspaper of general circulation not less than four times at weekly intervals within a period of at least forty days after adoption, and (3) a forty-day time period after passage of the resolution has elapsed without receipt of a petition for referendum. Art. 23A, § 13(d)–(f).

Appellee also cites *Dutton v. Tawes*, 225 Md. 484, 171 A.2d 688 (1961), in support of its position that literal compliance with section 17 is not required. In *Dutton*, a taxpayer challenged the validity of a referendum vote adopting the Potomac River Compact of 1958 on the grounds that the publication requirements were not complied with. *Id.* at 488, 171 A.2d 688. The Maryland Annotated Code, Article 33, section 170 (repealed 1967), the applicable statute, required publication of the text of a referred law by at least one insertion in two or more newspapers within the several counties of the State and all of the daily newspapers published in Baltimore City. *Id.* at 490, 171 A.2d 688. The

notice was only published in the Baltimore Sun on one occasion. *Id.* Although the publication requirements of Article 33, section 170 were not substantially complied with, the Court held that:

> We think, however, that the record shows there was substantial, if not full, achievement of the *purpose of the statute to acquaint the electorate fully with the law involved, and nothing to show that the deviation from the prescribed mode of acquainting, misled the voters or prevented, frustrated or interfered with a free, full and intelligent expression of the popular will.*

*Id.* at 493, 171 A.2d 688 (emphasis added). We agree that while compliance is desired, it is not always mandatory. Substantial compliance, however, that sufficiently affords the electorate an opportunity to exercise its rights, is required. In the present case, that degree of compliance is absent.

Appellee's reliance on *Ocean City Taxpayers for Equal Rights, Inc. v. Mayor,* 280 Md. 585, 375 A.2d 541 (1977), to support its contention that substantial compliance with section 17 is sufficient absent a showing that any member of the electorate was misled is equally misplaced. First, as we have said, this case involves section 13, which provides basic procedural safeguards for the substantive right of the citizens—not section 17, which is concerned with matters of form. Additionally, in *Ocean City Taxpayers,* the plaintiffs filed a complaint alleging that resolutions passed that denied the right to vote to non-residents were defective in their titling and description of the subject matter. *Id.* at 589, 375 A.2d 541. Shortly thereafter, the Mayor and City Council passed new resolutions to cure any defect in the earlier resolutions. *Id.* at 593, 375 A.2d 541. The Court of Appeals upheld the new resolutions on the grounds that no interested person conceivably could have been misled and that the new resolutions were intended to repeal the possibly defective earlier ones. *Id.* In the case at bar, the electorate was not put on notice of the change in their

charter until well after it was declared "effective." *Ocean City Taxpayers,* therefore, is inapposite to the case at bar.

The City Council in the case *sub judice,* mistakenly misled the public by changing the form of their government without notice to them. The enactment of an immediately effective charter amendment is not in accordance with section 13(f), and the resulting failure to comply with the posting and publication requirements of section 13(d) and (e) are much more than mere "technical" noncompliance as appellee contends. The non-compliance divested the electorate of its right to veto by referendum the Council's attempt to change the basic form of government of Seat Pleasant. Therefore, because resolutions 90–09 and 90–10 were not posted and published as required by section 13(d) and (e), they never effectuated any change in the charter and cannot now be effective.

The Legislature, the Court of Appeals, and this Court have stated that the voters in a municipality must have the opportunity to make the final determination of whether their municipal charter will be amended. The procedure used here denied to the voters of Seat Pleasant the right to participate in that decision. By not posting and publishing the resolutions until the 20th day of December and by its prior declaration that the charter amendment was effective on July 9th, the City Council ignored the procedural safeguards provided by statute and deprived the electorate of Seat Pleasant of its right to be a part of the process. Even if the resolutions had been posted and published in the forty days after passage, the resolutions, by their language, would have misled the voters into believing that they were already in effect and thus no longer subject to referendum. The provisions for voter participation by referendum in the process of charter amendment were made meaningless by what occurred in the case at bar.

We hold that the posting and publication of notice of a charter amendment five and one-half months *after* the stated effective date of the amendment does not *and can-*

*not* comply with the mandated requirement provided for the amendments of the charters of municipal corporations. A citizen is not properly notified of the right to petition a resolution containing a proposed charter amendment to referendum by posting and publication months after that right has expired. To the extent the resolutions here were not nullities when enacted by reason of the improper effective date stated, they became immediately invalid and inoperative upon the passage of forty days without posting and publication. In light of our treatment of the issue of posting and publication, we do not further address the other issues raised by the parties.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.