ROBERT H. GOLDSMITH and THOMAS M. DELL, Co-Partners, Trading as Goldsmith & Dell,

*vs.*

THE MANUFACTURERS' LIABILITY INSURANCE COMPANY OF NEW JERSEY.

*Illegal contracts: not enforcible; business or profession where license is for protection of public. Insurance brokers.*

Where a contract which the plaintiff seeks to enforce is expressly or by implication forbidden by the statute, no court will lend its assistance to give it effect.               p. 286

A contract entered into by an unlicensed person engaged in a trade, business or profession required to be licensed and made in the course of such trade, business or profession, can not be enforced by such person if it appears that the license required is, in whole or in part, for the protection of the public and to prevent improper persons from engaging in such business.

p. 286

But if the object of the statute is only to raise revenue, the right to enforce such contract is not defeated by want of a license.                              p. 286

Section 219 of Article 23 of the Code, imposing a license fee on any natural person, *bona fide* copartnership or corporation carrying on the business of insurance brokerage, is partly to protect the public and for the regulation of the business, and such a broker who obtains contracts without being licensed so to do can not enforce the same.              p. 289

*Decided February 23rd, 1918.*

Appeal from the Baltimore City Court. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Henry H. Dinneen* (with whom was *W. Stuart Symington, Jr.,* on the brief), for the appellants.

*E. Allan Sauerwein, Jr.,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was instituted by the appellants against the appellee company to recover compensation, in the nature of commissions, for their services in causing the workmen's compensation insurance of the Gathman Ammunition Company to be placed with the defendant company.

At the time the services were rendered the appellants were not agents of the defendant, nor were they licensed by the State of Maryland to operate therein as insurance brokers; and the sole question presented by this appeal is whether the Court below erred in holding that the appellants, being unlicensed brokers, could not recover for their services so rendered.

The statute (Sec. 219 of Art. 23 of the Code, Vol. 3) provides that:

> "Any natural person, *bona fide* copartnership or corporation applying therefor as hereinafter set forth, and paying to the Insurance Commissioner the sum of one hundred dollars ($100.00) for the use of the State, and an additional sum of one dollar ($1.00) as a fee to the said commissioner for issuing said license, may obtain a license for carrying on the business of an

insurance broker, * * * . Every application for a
license under this section shall be addressed to the
Insurance Commissioner in writing, shall set forth in
full the name and address of each such applicant and
the name and address of each person who proposes to
act under the license issued as aforesaid to any copart-
nership or corporation, that each such applicant or
person proposing to act under such license has not will-
fully violated any of the insurance laws of this State
during the past year and that he will not violate any
such law during the term of license applied for if is-
sued; that he has not dealt unjustly with or deceived
any citizen of this State or misrepresented the condi-
tions of any insurance policy or contract; whether or
not he is indebted to any insurance company or gen-
eral agent by virtue of any contract as former agent
or broker; whether or not his license as insurance
agent or broker has been declined or revoked in this
or any other State for a violation of law; where and
in what business engaged during the past year, and
shall give full answers to the following questions: Do
you understand that it is against the laws of this State
(a) to act as broker for any company without license
from this department; (b) to misrepresent the condi-
tions of any policy contract; (c) to make any dis-
crimination between citizens of this State in pre-
miums, or in rebating any part of premiums or com-
missions, or to twist or attempt to twist policies by
misrepresentation. Said application and declaration
shall be signed by the person, a member of the co-
partnership, or duly authorized officer of the corpora-
tion applying, as the case may be."

Section 220 of said Article provides that "any person who
shall use or exercise the business or occupation of an insur-
ance broker, without having procured a license therefor, as
required by Secs. 218 and 219 of this Article, shall be sub-
ject to a penalty of five hundred dollars ($500.00) for each

offense"; and by Sec. 185 it is provided that no corporation, co-partnership or individual "shall, directly or indirectly, pay, except to the lawful agent or solicitor of such company * * * or to an insurance broker, licensed by the State of Maryland, any commission, reward or rebate in consideration of procuring, or influencing others to procure, insurance from such company, association, individual or firm; * * * and any person violating any of the provisions of this section shall be subject to the fines (one hundred to one thousand dollars) imposed by Sec. 205 of this Article."

It is settled that where the contract which the plaintiff seeks to enforce is expressly or by implication forbidden by the statute, no Court will lend its assistance to give it effect. *Cope* v. *Rowlands,* 2 M. & W. 149.

By the great weight of authority, a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession If, however, the purpose of the statute is to raise revenue only, his right to enforce such contract is not defeated by the want of a license. *Elliott on Contracts,* Sec. 267; *Cope* v. *Rowlands, supra; Randall* v. *Tuell,* 89 Me. 443, 38 L. R. A. 143; *Black* v. *Security Mutual Life Association* (Me.), 49 Atl. Rep. 51; *Fairly* v. *Wappoo* (S. C.), 22 S. E. 108; *Stevenson* v. *Ewing* (Tenn.), 9 S. W. 230.

It was said by BARON PARKE in *Cope* v. *Rowlands*: "The question for us now to determine is, whether the enactment of the statute is meant *merely* to secure a revenue to the city, and for that purpose to render the person acting as a broker liable to a penalty, if he does not pay it? or whether *one* of its objects be the protection of the public, and the prevention of *improper* persons acting as brokers? On the former

supposition, the contract with a broker for his brokerage is not prohibited by the statute; on the latter, it is."

The same doctrine is expressed in *Stevenson* v. *Ewing, supra,* where it is said: "When the question is whether a contract has been prohibited by statute, it is material in construing the statute to ascertain whether the Legislature had in view solely the security and collection of the revenue, or had in view, in whole or in part, the protection of the public from fraud in contracts, or the promotion of some object of public policy. In the former case the inference is that the statute was not intended to prohibit contracts; in the latter, that it was."

It may also be said that the law of this State as laid down by the decisions of this Court is entirely consistent with the law as stated in the cases above cited.

In *Banks* v. *McCosker,* 82 Md. 518, the action was brought to recover the purchase money for goods bought by the defendant from a pedlar. One of the defences to the action was that the pedlar had not, prior to the sale to the defendant, obtained a license as required by law in such cases. JUDGE ROBERTS, speaking for the Court, quoted that part of the Court's opinion in *Stevenson* v. *Ewing,* above quoted, as correctly laying down the general principles which, as expressed by him, "run through nearly all of the decisions, English and American"; but upon the provisions contained in the statute, the Court held that it was a revenue measure only, and that the contract was legal, although it said that the question of the legality *vel non* of such a contract depended "in great part, if not altogether, upon the phraseology of the particular statute under consideration. If the statute seeks only the collection of revenue, * * * there can be no doubt as to its purpose and meaning, but when, as already stated, it is the design of the law-making power to protect the public from fraud in the contract, or the promotion of some object of public policy the contract is then prohibited."

The statute involved in *Coates* v. *Locust Point Company,* 102 Md. 291, provided that "any person, co-partnership or firm applying for the same and paying the sum of money herein provided, may obtain a license for carrying on the business of real estate broker in the City of Baltimore," etc. The statute then made it a misdemeanor, and imposed a fine for carrying on such business without first obtaining a license, but did not declare invalid a contract made by one who was not licensed, or did it indicate that such should be the result, or did it contain any provisions from which it could be gathered that its object and purpose, in whole or in part, was to protect the public from fraud by preventing improper persons from obtaining such license, and consequently the Court held that the statute was a revenue measure only and that the contract was legal.

In *Walker* v. *Baldwin,* 103 Md. 352, the Court said, speaking through JUDGE BURKE: "The authorities are in accord on this point (that is, upon the illegality of the contract in such cases) where the license is required for public protection and to prevent improper persons from acting in a particular capacity and not for revenue purposes only."

In accordance with the above authorities and many others that might be referred to, it must be held that the plaintiffs can not recover upon the contract in this case. The purpose of the statute is, in part at least, the protection of the public. It is certainly not for revenue alone. The statements required to be made by the applicant in his application for license and the provision in the statute that no person shall pay, except to a lawful agent or licensed broker, commissions, etc., for procuring, or for influencing others in procuring insurance, characterize the statute as one enacted, not for revenue alone, but to protect the public against the wrongdoing, imposition and fraud of persons who might obtain a license if not for such provisions.

The applicant for license, among other things, is required to state that he has not dealt unjustly with or deceived any

citizen of this State, or misrepresented the condition of any insurance policy or contract; and whether or not his license as insurance agent or broker has been declined or revoked in this or any other State for a violation of the law. In view of these and like provisions of the statute, and the provision mentioned above, imposing a large fine upon anyone paying commissions, etc., to any person other than a lawful agent or licensed broker, we can not escape the conclusion that the statute was passed, in part at least, for the protection of the public and to prevent improper persons from engaging in the insurance business. This construction of the statute is in accord with the decision of this Court delivered by JUDGE CONSTABLE in *Shehan* v. *Tanenbaum Son & Co.,* 121 Md. 283. We were, in that case, considering the statute as it stood prior to its amendment by the Act of 1914, Chapter 504, by which further requirements were placed upon the applicant in the way of statements to be made by him in his application for license, and there we said, speaking of the statute as it then stood, that one of the purposes of the statute was the regulation of the business of insurance and that revenue was only one of the purposes for which it was enacted.

In view of what we have said, the judgment of the Court below will be affirmed.

*Judgment affirmed, with costs to the appellee.*