## SNODGRASS *v.* IMMLER, ET AL.

[No. 14, September Term, 1963.]

*Decided October 9, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*William H. Pattison, Jr.,* for appellant.

*Robert C. Heeney,* with whom were *John F. McAuliffe, Craig S. Rice* and *Heeney & McAuliffe* on the brief, for George A. Kolstad, one of the appellees.

No brief and no appearance for Charles W. Immler, other appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal brings up the question whether the Maryland statute dealing with the licensing of architects bars a plaintiff, who is not a licensed architect, from recovering as a third party beneficiary for architectural services rendered by him to a property owner under a contract between the latter and a licensed architect which required the licensed architect to employ the plaintiff's services. The plaintiff, DeLos V. Snodgrass, took this appeal when the Circuit Court for Montgomery County found against him and entered a judgment for costs in favor of the defendants, George A. Kolstad, the property owner, and Charles W. Immler, the licensed architect, who are appellees here.

In his suit against Kolstad and Immler, Snodgrass alleged performance of architectural services for Kolstad pursuant to a contract between himself and Immler, and a contract between Immler and Kolstad. Snodgrass was not a party to the contract between the appellees, but claimed, in a special count, that he was entitled to recover thereunder as a third party beneficiary. He did not claim damages against Immler under the contract between himself and Immler. The latter filed a counter-claim against his co-defendant, Kolstad, for services and expenses, plus any amount which he might be called upon to pay Snodgrass as a result of the suit. After a trial without a jury the lower court found in favor of Kolstad and Immler in the suit filed by Snodgrass, and in favor of Kolstad on the counter-claim of Immler. The latter did not appeal.

This controversy arose in the following manner. In 1958 Snodgrass was employed as an architectural draftsman by a manufacturer of prefabricated homes. He had taken a course in architecture, but had not completed it, and he was not a licensed architect. At that time, Kolstad, being interested in building a

certain style of home which he had seen advertised in a maga-
zine, was referred to Snodgrass. According to Kolstad's undis-
puted testimony, after Snodgrass described his background in
designing houses, exhibited some of his work, and showed
Kolstad a house that he had "had a hand in designing", Kol-
stad expressed a desire that Snodgrass plan and design a resi-
dence for him, setting a price range of between $25,000 and
$30,000. Snodgrass then informed Kolstad that he was not a
licensed architect, and thus would not be able to perform the
desired services without risking a violation of Code (1957),
Art. 43, Sec. 515 (*infra*). In an attempt to avoid this difficulty,
Kolstad employed Immler, a licensed architect, and a contract
was entered into between Kolstad and Immler, which provided,
among other things, that Snodgrass should perform the archi-
tectural services required under the contract, including the
preparation of the design, plans and specifications for the dwell-
ing, under the direction and supervision of Immler. At the
same time, Snodgrass and Immler entered into a contract pro-
viding that Snodgrass would perform the architectural services
mentioned in the Kolstad-Immler contract. Under the contracts,
Immler was to receive five per cent of the cost of the dwell-
ing and was to pay four per cent to Snodgrass.

The initial plans prepared by Snodgrass were discarded be-
cause they did not come within the original price range. Dur-
ing the course of redesigning, Kolstad extended the price range
by setting a maximum of $35,000, this to include residence,
carport, driveways and a barn. The testimony indicates that for
the most part Snodgrass dealt directly with Kolstad in connec-
tion with the designing and redesigning. Immler stated that at
one conference which he attended he made mention that the
projected plans for the house alone were "far and beyond" the
estimated cost, but "no one seemed to listen", and "the work
just went on between these two gentlemen". Immler also testi-
fied, without objection, that the person who actually rendered
the architectural services was Snodgrass, and not himself.

The final plans prepared by Snodgrass were submitted to a
number of builders but only one replied, estimating the con-
struction cost for the total project at a figure in excess of $98,-
000. Kolstad claimed that he was not aware that the construc-

tion cost would be in excess of the $35,000 maximum, and that he had not been informed of this by Snodgrass during the re-designing of the dwelling. Snodgrass' plans were not utilized since they were completely out of Kolstad's price range. When Snodgrass did not receive payment for his work he filed the present suit. Kolstad defended on the basis that the contracts were illegal under Code (1957), Art. 43, Secs. 515 and 516, and claimed lack of privity.

Neither defendant raised the issue of failure of consideration based on the inadequacy of Snodgrass' plans for the purpose intended, and hence this question is not before us. Thus the decisive question presented is whether Code (1957), Art. 43, Secs. 515 and 516, bar Snodgrass from recovering as a third party beneficiary under the contract between Kolstad and Imm-ler. Snodgrass' right to proceed as a third party beneficiary appears to have been assumed. See *Marlboro Shirt Co. v. Am. Dis. Tel. Co.*, 196 Md. 565, 77 A. 2d 776 (1951). Kolstad con-tends, and the trial judge held, that the contract upon which Snodgrass bases his claim as a third party beneficiary was in violation of Secs. 515 and 516, thereby barring his recovery of architectural fees inasmuch as Snodgrass was not a licensed architect.

Section 515 provides:

"It is hereby declared that in order to safeguard life, health, public safety and property and to promote the public welfare by requiring that only properly qualified persons shall hold themselves out as archi-tects or use the designation of 'architect' in the State of Maryland, such persons shall be compelled to submit evidence that they are qualified to practice architec-ture and shall be registered as hereinafter provided."

Section 516 defines "architect" as one who

"* * * holds himself out as able to perform or who does perform any professional service, such as con-sultation, investigation, planning, including aesthetic and structural design, or responsible supervision of construction, in connection with any private or public

buildings, structures, or projects, * * * wherein the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of the art and science of construction based upon the principles of mathematics, aesthetics and the physical sciences. * * *"

The penalty for violating the statute, under Sec. 525 of Art. 43, is a fine not exceeding $1000.00 or imprisonment not exceeding one year, or both.

Under the facts of this case, it would appear that there was sufficient evidence to support the trial court's finding that Snodgrass did hold himself out to Kolstad as an architect, though admittedly not as a *registered* architect. His description of his background in designing houses, his exhibition of some of his designs, and of a house that he had helped to design, persuaded Kolstad that Snodgrass was indeed an architect with the requisite training and ability to design and plan a dwelling for him. The other acts of Snodgrass bring him within the statutory definition of what constitutes an architect. He assumed responsibility for the planning and designing of the dwelling, "including aesthetic and structural design"; he supplied consultation services, giving Kolstad advice on various modifications; and finally, he made two sets of plans and specifications, one of which was submitted to builders for estimates of cost of construction. "It is generally held that designing a building for another, or the furnishing of plans and specifications for such a building, constitutes architectural services", 5 Am. Jur. 2d, *Architects,* Sec. 3.

Since Snodgrass did hold himself out as an architect, our next inquiry must be whether or not Art. 43, Secs. 515 and 516, *supra,* prohibit Snodgrass from recovering as a third party beneficiary under the contract between Immler and Kolstad. That contract and the contract between Immler and Snodgrass constituted a simultaneous transaction, as the trial court found. In *Goldsmith v. Mfrs.' Liability I. Co.,* 132 Md. 283, 103 Atl. 627 (1918), this Court stated (at p. 286 of 132 Md.) :

"* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required

to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession. If, however, the purpose of the statute is to raise revenue only, his right to enforce such contract is not defeated by the want of a license. * * *"

It is manifest from the face of Secs. 515 and 516, as well as from the criminal sanctions provided, that the statute is of a regulatory nature for the protection of the public, as Sec. 515 explicitly states, and not a revenue measure; thus, under the rule of the *Goldsmith* case, a contract prohibited by the statute would not be enforceable by the unlicensed party.

Considered alone, the contract between Immler and Kolstad, upon which Snodgrass bases his right to recover, would appear to be perfectly valid since Immler was a duly licensed architect. But when the facts surrounding this contract and its companion contract are examined, it is at once apparent that the contracts were a subterfuge employed in an attempt to circumvent the licensing statute. The evidence shows that in reality it was Snodgrass who performed the functions of an architect, and that Immler was used as a mere strawman to allow Snodgrass to do indirectly what he could not do directly. The trial court found that Immler was acting as a "front" for Snodgrass' activities, and the evidence supports that conclusion. Since Snodgrass would not be able to collect a fee from Kolstad as a party to a direct contract between himself and Kolstad, he cannot recover a fee as a third party beneficiary under a sham contract devised in order to allow him to perform architectural services without a license.

Snodgrass relies heavily on the fact that he informed Kolstad that he was not a licensed architect and that Kolstad proceeded with full knowledge of that fact. However, this is not controlling. In *Kirschner v. Klavik*, 186 A. 2d 227 (1962), the Municipal Court of Appeals for the District of Columbia, in a case involving a claim for architectural services by an archi-

tectural draftsman under a contract alleged to be void under the Maryland statute (Code (1957), Art. 43, Sec. 515, *supra*), stated (at p. 229):

> "Generally, a contract made in violation of a Maryland statute designed for police or regulatory purposes is void and confers no rights upon the wrongdoer. Neither can the wrongdoer sue in quasi-contract for the value of his services or for the value of the benefits conferred upon the other party. This is true even where, as was shown here, the appellants entered into the contract with appellee knowing he was not duly licensed under the local statute as an architect. * * *"

Other authorities have reached the same conclusion. In *Clark v. Eads,* 165 S. W. 2d 1019 (Tex. Civ. App. 1942), the court, in construing an architectural licensing statute similar to that of Maryland, rejected a contention that notice to clients would protect an unlicensed architect, saying (at p. 1023): "It was not intended to permit architects who generally hold themselves out as such to practice their profession without a license simply by resorting to the expedient of explaining to their clients that they had no license". See also *Wedgewood v. Jorgens,* 157 N. W. 360 (Mich. 1916); 5 Am. Jur. 2d, *Architects,* Sec. 4; 6 C.J.S., *Architects,* Sec. 5 at p. 298; cf. *Binford v. Boyd,* 174 Pac. 56 (Cal. 1918), which is contra under a special provision of a California statute regulating architects.

The appellant further urges that Art. 43, Sec. 515, only prohibits the business use of the title "architect" by unlicensed persons. The statutory language plainly shows this contention to be untenable since the prohibition is stated in the alternative, i. e., "only properly qualified persons shall hold themselves out as architects *or* use the designation of 'architect'." (Emphasis supplied.) The appellant relies on *Pitts v. State Board of Examiners,* 222 Md. 224, 160 A. 2d 200 (1960), to support his contention, but that case dealt only with the constitutionality of the Psychologist's Certification Act, Art. 43, Secs. 618-644, not with the validity and enforceability of a contract made or instigated by an unlicensed person in a regulated profession or

424

business, and is thus distinguishable. The cases of *Brown v. Glass*, 167 S. E. 722 (Ga. 1933), and *Schloss v. Davis*, 213 Md. 119, 131 A. 2d 287 (1957), also cited by the appellant, are likewise distinguishable, the first because of substantial differences in the statute involved, and the second because the statute there construed was held to be for revenue and not for regulation.

For the reasons mentioned, we hold that under Code (1957), Art. 43, Secs. 515 and 516, *supra*, the appellant is barred from recovering as third party beneficiary under the contract between Kolstad and Immler.

*Judgment affirmed; appellant to pay the costs.*