HARRY BERENTER, INC. *v.* BERMAN, ET UX.

[No. 398, September Term, 1969.]

*Decided June 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Samuel Gordon,* with whom was *S. Michael Pincus* on the brief, for appellant.

*Patrick C. McKeever,* with whom were *Shaffer, Mc-Keever & Fitzpatrick* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The principal question in this appeal is whether or not the Circuit Court for Montgomery County (Joseph M. Mathias, J.) erred in holding that the appellant, Harry Berenter, Inc., could not enforce a mechanic's lien for $12,976.54 plus interest, upon the home property of the appellees, Philip G. Berman and Toby Berman, his wife, defendants below, because the appellant was not licensed pursuant to the Maryland Home Improvement Law, Code (1957), Art. 56, §§ 245-269, when the contract or contracts for the work done and materials furnished were made. The lower court also agreed with the appellees that there were *four* separate contracts for the work done and materials furnished, rather than one contract, and that the appellant had not sufficiently indicated in the mechanic's lien claim that the work was done or the materials furnished within six months under each separate contract. Inasmuch as we are of the opinion that the trial court correctly ruled in regard to the principal question mentioned above, we do not find it necessary to reach the second question in regard to the four separate contracts.

The facts are not in dispute. The appellant, Berenter, Inc., the plaintiff below, in 1966 and thereafter was engaged in the construction business including the remodeling of homes. There is no contention by the appellant that the Home Improvement Law does not apply to it and it is conceded that it was not licensed under that Law when the contract or contracts involved in the present case were made.

In the spring of 1966, the Bermans' home in Silver Spring, Montgomery County, was severely damaged by fire. Shortly after the fire had occurred, the Bermans employed Berenter, Inc., to do certain work and supply certain materials for their home. Four different letters evidenced the contractual relationship between the parties. The first letter dated June 15, 1966, was for the repair of the fire damage for $8,500. When Berenter, Inc., had completed approximately 80% of this work, the Bermans wished to have additional work done in connection with a second floor room. They submitted a letter dated July 14, 1966, detailing this work for an agreed price of $9,500. Still later, in a letter dated September 20, 1966, an enclosed porch was to be built for an agreed price of $2,650 and, finally, by a letter dated December 9, 1966, additional work was outlined for which the Bermans were billed $2,326.54. In November 1966 after the Bermans had paid Berenter, Inc., $10,000, they became dissatisfied with the work and a quarrel ensued. No further payments having been paid by the Bermans, a mechanic's lien for $12,-976.54 was filed on February 21, 1967, against the home property by Berenter, Inc. The lien stated that it was "for labor and materials furnished in and upon said property. *within six months past.* . .per oral agreements dated June 15, 1966, July 14, 1966 and September 20, 1966, in the sum of $8,500.00, $9,500.00 and $2,650.00 respectively, and the oral agreement dated December 9, 1966, in the sum of $2,326.54. . . ." (Emphasis supplied.) The lower court, after considering the evidence and the memoranda of counsel for the respective parties, filed a written

opinion and passed an order on October 9, 1969, dismissing the bill of complaint. A timely appeal was taken by Berenter, Inc., to this Court from that order.

We, and our predecessors, have held that if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy. In *Snodgrass v. Immler*, 232 Md. 416, 194 A. 2d 103 (1963) — which we consider to be controlling in the present case—the plaintiff, an architect, sought to recover architectural fees for services rendered by him, even though he was not licensed as an architect as required by Code (1957), Art. 43, §§ 515 and 516. Like the Home Improvement Law involved in the instant case, the Code provisions requiring architects to be licensed provided for criminal sanctions, but was silent in regard to civil consequences following from the failure to obtain a license. Judge Sybert, for the Court, stated:

> "In *Goldsmith v. Mfrs.' Liability I. Co.*, 132 Md. 283, 103 Atl. 627 (1918), this Court stated (at p. 286 of 132 Md.) :
>
> " '* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession. If, however, the purpose of the statute is to raise revenue only, his right to enforce such contract is not defeated by the want of a license. * * *'
>
> "It is manifest from the face of Secs. 515 and 516, as well as from the criminal sanctions pro-

vided, that the statute is of a regulatory nature
for the protection of the public, as Sec. 515 ex-
plicitly states, and not a revenue measure; thus,
under the rule of the *Goldsmith* case, a contract
prohibited by the statute would not be enforce-
able by the unlicensed party."
(232 Md. at 421-22, 194 A. 2d at 105-06.)

Both *Snodgrass* and *Goldsmith* were cited with ap-
proval by us in *Smirlock v. Potomac Development Corp.*,
235 Md. 195, 203, 200 A. 2d 922, 926 (1964) and in
*Thorpe v. Carte*, 252 Md. 523, 529, 250 A. 2d 618, 622
(1969). See also 2 Restatement, *Contracts*, §§ 580, 598.

It is clear to us that the Maryland Home Improvement
Law is a regulatory statute for the protection of the pub-
lic and is not merely a revenue measure. Art. 56, § 246
provides:

"No person may engage in or transact any
home-improvement business, or hold himself out
to the public as doing home-improvement busi-
ness, or offer to transact any home-improvement
business, in this State, except in compliance
with the applicable provisions of this subtitle.
No person, whether subject to licensing by any
law or otherwise, may engage in this State in
any trade practice or other act which is prohib-
ited by any provisions of this subtitle; and every
person who wilfully participates in a prohib-
ited act or violation with knowledge of the same
is subject to the criminal penalty therefor. The
provisions of this subtitle may not be waived
by agreement."

Art. 56, § 250 creates the Maryland Home-Improve-
ment Commission of five members, appointed by the Gov-
ernor for four year terms. The Governor is directed to
appoint "no less than two persons who are qualified by
experience in at least some phase of the home-improve-
ment industry, and no less than one person who is quali-

fied by experience in the business of banking or finance." Each member of the Commission is required to be a "citizen and resident of this State for not less than five years preceding his appointment." The Commission by Art. 56, § 251 is given the duty to administer and provide for the enforcement of the Maryland Home Improvement Law and is given the powers expressly conferred or reasonably implied from the provisions of the subtitle. The Commission is given the rule-making powers and the power to employ and discharge inspectors, auditors and investigators. The Attorney General is authorized to appoint a qualified attorney at law to serve at his pleasure to represent the Commission.

Art. 56, § 258 provides:

"For the protection of the people of this State, the Commission shall not grant a license to any person, nor shall it continue a license already issued where the Commission finds that:

"(a) The person or the management personnel of the person, are untrustworthy or not of good character; or

"(b) The home-improvement transactions of the person, or the management personnel of the person, have been marked by a practice of failure to perform contracts, or by the manipulation of assets or accounts, or by fraud or bad faith."

Section 261 sets out 14 clauses of prohibited acts, including willful failure to comply with an order, demand or requirement of the Commission under the subtitle.

There are also provisions for hearings on suspension or revocation of licenses and for judicial review.

The license fee is only $25.00 for each year or part of a year and regardless of the number of business locations. This license fee also includes the fee for one salesman's license, which is $10.00 for each year or part thereof. It is clear that this license fee is designed to cover a part

of the cost of regulation and is not imposed merely for revenue.

Berenter, Inc., earnestly contends that because the enforcement of a mechanic's lien is involved in an equity court, the rule against the enforcement of contracts by unlicensed persons under regulatory laws should not apply. In our opinion, even though the mechanic's lien is created by statute, nevertheless such a lien is provided for the *enforcement of a contract* for work done and materials furnished, Code (1957), Art. 63, §§ 1, 19. The same public policy is involved in regard to this remedy as is present in regard to other remedies to enforce contracts. It is also clear that courts of equity will not lend their aid to enforce an illegal contract, 3 Pomeroy, *Equity Jurisprudence* (5th Ed.), § 940, p. 728.

The appellant Berenter, Inc., also argues that unless the mechanic's lien is enforced, the Bermans will be "unjustly enriched to no small extent." However, as we said in *Thorpe v. Carte, supra,* quoting from 2 Restatement, *Contracts,* § 598, comment a:

> "The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff."

Nor is the contention that there is unjust enrichment of the defendants tenable. To permit a recovery on a *quantum meruit* would defeat and nullify the statute. *Northen v. Elledge,* 72 Ariz. 166, 232 P. 2d 111 (1951); *Lewis & Queen v. N. M. Ball Sons,* 48 Cal.2d 141, 308 P. 2d 713 (1957).

Although not raised below or briefed by the parties in this Court, the appellant raised for the first time at the oral argument the contention that the provisions of § 265 of Art. 56 indicate a legislative intention that contracts of unlicensed persons under the Maryland Home Improvement Law are not to be unenforceable for that reason.

Ordinarily, we will not consider a point or question on appeal if not tried or decided by the lower court. Mary-

land Rule 885. This is one of the rare cases, however, in which, because of the public interest in deciding the question and also possibly to prevent the expense and delay of another appeal to this Court, we have decided to consider the question.

Section 265 (a) provides:

> "(a) *Application of section; validity of contracts.*—This section shall apply only to home-improvement contracts between a prime contractor and the owner for work upon one-, two-, or three-family dwelling places, where the aggregate contract price exceeds $200.00; and where the contractor is licensed, or is subject to be licensed, in accordance with the provisions of this subtitle, with regard to the home-improvement transaction. Contracts which fail to comply with the requirements of this section shall not be deemed to be invalid solely because of noncompliance."

Then follow subsections (b), (c) and (d) which set out the *form* and other requirements of the contract, including the requirements that the contract include the name, address and license number of the salesman who negotiated the contract, the approximate dates of completion, a description of the work done and materials to be used, the agreed consideration, payment provisions and collateral security. It is also provided that the contract shall be legible and the owner shall be furnished a copy of the written contract signed by the contractor.

The legislative intent disclosed by § 265 was, in our opinion, that a contract should not be invalidated *solely* by noncompliance with the rather detailed, but in many instances, rather minor requirements set out in § 265 itself. It will be observed that the "saving clause" is limited to noncompliance with "the requirements of *this section*", *i.e.*, § 265 (Emphasis supplied.). It was thus intended by the General Assembly to limit the saving clause in subsection (a) to the matters of form and content set

out in the following subsections and not to extend it to the whole *subtitle*. This intention is also indicated by the use of the phrase "shall not be deemed to be invalid *solely* because of noncompliance." (Emphasis supplied.) The clear implication is that a contract may well be invalid for reasons other than for noncompliance with the provisions of § 265, including the failure to obtain a license as required by other provisions of the subtitle.

We must assume, in seeking to discover the legislative intent, that the General Assembly was cognizant of the existing law and legislated with the existing law in mind. See *Giant Food, Inc. v. Gooch*, 245 Md. 160, 165, 225 A. 2d 431, 434 (1967) and prior cases therein cited.

The General Assembly would, therefore, be aware of our decision in *Goldsmith*, decided on February 23, 1918, when it enacted the original Maryland Home Improvement Law by the Laws of 1962, Chap. 133, effective June 1, 1962. The original statute has been substantially amended since its original passage in 1962. It was amended in 1965 by the Laws of that year, Chapters 719, 720, 721 and 850, all effective June 1, 1965, so that the General Assembly was aware of our decision in *Snodgrass*, decided October 9, 1963, when it passed those amendments. The original statute was further amended by the Laws of 1966, Chapters 634 and 647, both effective June 1, 1966, so that the Legislature was cognizant of our decision in *Smirlock*, decided June 8, 1964. Finally, the statute was further amended by the Laws of 1969, Chap. 292, effective July 1, 1969, so that the General Assembly was aware of our decision in *Thorpe*, decided March 5, 1969. As we have set forth above, all of these decisions indicate that when a statute is regulatory in nature, this Court will assume, if the legislature does not indicate otherwise, that contracts made by unlicensed persons subject to the statute are illegal as against public policy and will not be enforced. If the legislature had intended to change this established rule of law it would doubtless have provided in the original statute or in the subsequent amendments that such contracts would be le-

gal and enforceable. We conclude that the General Assembly intended no change in the existing law in this regard.

> *Order of October 9, 1969, affirmed, the appellant to pay the costs.*