747 A.2d 743

DeREGGI CONSTRUCTION COMPANY, et al.

v.

Christian P. MATE, et al.

No. 6899, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 7, 2000.

**650**

Patrick C. McKeever (Miller, Miller & Canby, on the brief), Rockville, for appellants.

James W. Salter, III (Tomes & Salter, on the brief), Rockville, for appellees.

Argued before THIEME, ADKINS and JAMES S. GETTY (Retired, Specially Assigned), JJ.

ADKINS, Judge.

We must decide in this appeal whether the Circuit Court for Montgomery County erred in dismissing a Petition to Establish a Mechanics' Lien filed by DeReggi Construction Company and DeReggi Custom Homes, appellants, against Christian and Leanne Mate, appellees. Appellants raise two issues on appeal:

I. Whether the trial court erred when it refused to enforce a contract to build a new home on the ground that the contractor was unlicensed, as required by the Montgomery County Code ("MCC"), when the contractor obtained a builder's license before performance began.

II. Whether the trial court erred by refusing to enforce a building contract because it failed to comply with the Custom Homes Protection Act (the "Act")?

## FACTS AND LEGAL PROCEEDINGS

Appellant DeReggi Construction Company is a general partnership comprised of John DeReggi and Marilyn DeReggi. Appellant Marilyn DeReggi does business under the name DeReggi Custom Homes and is a distributor of Lindal Cedar Homes.

Appellees are the owners of real property in Montgomery County, Maryland. On December 29, 1996, appellees entered into a Construction Agreement ("contract") with appellants for the construction of a custom home for the total sum of $251,067.

At the time the contract was executed, appellants did not have a builder's license. On January 22, 1997, appellants applied for a builder's license, which was issued by Montgomery County on February 10, 1997.

After the issuance of the license, appellants began work pursuant to the contract and appellees paid appellants $249,-500. At some point, a disagreement arose between the parties. Appellees contended that the house was not completed, while appellants contended that appellees had not paid for numerous extras and changes that were done pursuant to the contract.

On February 27, 1998, appellants filed a "Petition to Establish and Enforce Mechanics' Lien" in the circuit court. De-Reggi Construction Company requested that the court establish a lien in its favor in the amount of $86,028.19 for unpaid labor and materials. Additionally, DeReggi Custom Homes claimed that it was entitled to a lien for $6,471.81, the unpaid balance due under the contract.

Appellees answered and moved to dismiss the petition. Appellees claimed that the contract was void and unenforceable because appellants did not have the building contractor's license required under the MCC. Furthermore, appellees claimed that appellants failed to comply with the Act, which requires a builder before entering into a contract for the construction of a new home to make certain disclosures. *See* Md.Code (1974, 1996 Repl.Vol.), § 10–501, *et seq.* of the Real Property Article ("RP"). On October 2, 1998, appellees filed a "Supplemental Motion to Dismiss or for Summary Judgment" containing a number of exhibits including: a supporting memorandum; excerpts of deposition testimony; appellants' application for a building contractor's license; the actual license issued to appellants; and a letter from a Montgomery County

official confirming that DeReggi Construction Company was licensed for the first time on February 10, 1997.

After a hearing, the circuit court granted appellees' motion to dismiss. In doing so, the court held that: (1) appellants were not licensed when the contract was signed; and (2) the disclosures required by the Act were not met. This appeal followed.

Additional facts will be added as appropriate in the course of our discussion.

## DISCUSSION

### a.

### Standard of Review

Summary judgment is appropriate where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Md. Rule 2–501(a). In reviewing a trial court's grant of summary judgment, we must determine whether the trial court's ruling was legally correct. *See Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990). "The purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or to resolve factual disputes." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994). Nevertheless, "when the pleadings, depositions, admissions on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then the judgment sought shall be rendered forthwith." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985).

### b.

### Violation of the Montgomery County Licensing Statute

Appellants contend that the trial court erred in ruling that the contract was unenforceable on the ground that appellants lacked the required license at the time the contract was

executed. Appellants' contention is twofold. First, appellants contend that the trial court misapplied the Court of Appeals's decision in *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 265 A.2d 759 (1970), in holding that a contractor is required to obtain a builder's license before the contract is signed. Additionally, appellants argue that the trial court "reached the factual conclusion of non-licensure on the basis of a record comprised of such incompetent and uncertain facts as not to support the conclusion."

▮ In interpreting a statute, a court should carry out the intent of the legislature. *See Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994). In doing so, language is given its plain and ordinary meaning. *See Harford County v. University of Md. Med. Sys. Corp.*, 318 Md. 525, 529, 569 A.2d 649 (1990).

▮ Maryland law is clear that if a licensing statute is regulatory in nature, for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts that fall within the regulatory scheme. *See Berenter*, 258 Md. at 293, 265 A.2d 759. As the Court of Appeals stated long ago:

> It is settled that where the contract which the plaintiff seeks to enforce is expressly or by implication forbidden by the statute, no [c]ourt will lend its assistance to give it effect.

> By the great weight of authority, a contract entered into by an unlicenced person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, cannot be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession.

*Goldsmith v. Manufacturers' Liab. Ins. Co. of N.J.*, 132 Md. 283, 286, 103 A. 627 (1918) (citation omitted).

Builders' licensing requirements in Montgomery County are governed under Chapter 31C of the MCC. In pertinent part, the statute provides:

**Sec. 31C–2. Licensing.**

(a) *Requirement.*

(1) a builder must not engage in the business of constructing new homes or act in the capacity of a building contractor within the County unless the builder is licensed by the [Department of Housing and Community Affairs].

* * *

(3) Each application must be accompanied by:

a. A reasonable fee sufficient to cover the cost of administration of this Chapter; and

b. Additional information as the County Executive requires by executive regulations.

(4) ... [T]he Board must certify to the Director whether:

a. The applicant ... [is] qualified to comply with the building code and laws of the County and State, and to fully perform building contracts; and

b. The applicant should be licensed.

In section 31C–1, the MCC defines builder as a person or organization "that is engaged in the business of erecting or otherwise creating a new home;" or "[t]o whom a completed new home is conveyed for resale in the course of the business of the person or business organization."

The licensing requirement is a regulatory statute. The statute's plain language indicates that for a license to be granted, a builder must show that it is able to comply with applicable laws and to fully perform building contracts. Moreover, the fee required to obtain a license is a fee to cover the cost of administration of the licensing scheme, not to raise revenue.

Appellees contend that *Berenter* is analogous to the present controversy. In *Berenter*, a construction company was not licensed under the Maryland Home Improvement Law when it entered a home improvement contract. At the time, the statute provided:

No person may engage in or transact any home improvement business, or hold himself out to the public as doing home-improvement business, or offer to transact any home-improvement business [without the required license].

*Berenter*, 258 Md. at 294, 265 A.2d 759 (citing Md.Code (1957), Art. 56 § 246). At some point, the construction company attempted to establish a mechanics' lien on the homeowner's property. The Court held that the Home Improvement Law was a regulatory statute, and the construction company's failure to obtain the necessary license rendered the contract unenforceable. As a result, the Court refused to permit the construction company to enforce a mechanics' lien. *See id.* at 296, 265 A.2d 759.

The language utilized in *Berenter* is broad and, potentially, could require a contract to be held unenforceable for *any* violation of a regulatory statute, absent express direction from the legislature "that such contracts would be legal and enforceable." *Id.* at 298–99, 265 A.2d 759. The Court of Appeals, however, has not followed this strict application of *Berenter*.

In *Gannon & Son, Inc. v. Emerson*, 291 Md. 443, 435 A.2d 449 (1981), a defendant in a mechanics' lien claim based on a home improvement contract claimed that the contract was unenforceable because (1) it was oral, in violation of Md.Code (1957, 1979 Repl.Vol., 1981 Cum.Supp.), Art. 56 § 265(b), and (2) it was in violation of section 261(a)(15), which made it illegal for a contractor to receive part of the purchase price "prior to the signing of a home-improvement contract." *Id.* at 445, 435 A.2d 449. The Court held that the violation of section 265 did not render the contract unenforceable because the statute contained a savings clause that stated: "[c]ontracts which fail to comply with the requirements of this section shall

not be deemed to be invalid solely because of noncompliance." *Id.* at 446, 435 A.2d 449 (quoting Art. 56 § 265(a)) (emphasis deleted).

The Court also addressed whether violation of section 261(a)(15) made the contract illegal and unenforceable. Section 261 contained statutory sanctions for noncompliance, but did not contain a savings clause like section 265. Additionally, the Court reaffirmed its position in *Berenter,* that the savings clause contained in section 265(a) "applies only to the failure to comply with the requirements of [section] 265." *Id.* at 452, 435 A.2d 449; *see Berenter,* 258 Md. at 297–98, 265 A.2d 759. Nevertheless, the Court recognized:

> '[T]he rights and remedies of parties growing out of prohibited contracts are to be determined by the construction of the statute ... and if it shall appear that it was not the intention of the Legislature to declare the contract void, although made against the prohibition this *intention* will be gratified, even if it should contravene some general rule of law.'

*Id.* at 453, 435 A.2d 449 (quoting *Lester v. Howard Bank,* 33 Md. 558, 565 (1871)) (emphasis in original). The Court subsequently held that the contract was enforceable because the legislature's intention would best be served if a statutory violation "would result in exposure to administrative sanctions, to possible ... civil proceedings and to possible criminal prosecution, but did not work [as] a forfeiture of [the] claim...." *Id.* at 458, 435 A.2d 449.

In *Citaramanis v. Hallowell,* 328 Md. 142, 613 A.2d 964 (1992), tenants to a residential lease claimed they were entitled to restitution of their lease payments because the landlord failed to license the property as required by a county ordinance. The Court rejected the tenants' contention that the lease was illegal and unenforceable. In doing so, the Court recognized that "unenforceability of a contract because of illegality is a function of the strength of the public policy involved together with the degree of the violation of that policy under the facts of the case." *Id.* at 158, 613 A.2d 964.

While the Court did not decide whether the failure to obtain the license would bar a landlord's claim for money under the lease, it did hold that the statutory violation would not render the contract void and require restitution. *See id.* at 164, 613 A.2d 964. The Court reasoned that the circumstances did not justify return of monies paid because "the tenants have received everything that they bargained for, and a necessary element justifying the remedy of restitution, *i.e.*, unjust enrichment, is lacking." *Id.* at 159, 613 A.2d 964.

Both *Emerson* and *Hallowell* indicate that a strict application of the rule that a contract that violates a regulatory requirement is unenforceable is not always appropriate. At times, the statutory goals are best satisfied by allowing such contracts to be enforced. In the present case, and unlike the contractor in *Berenter*, appellants did obtain a building license after the contract was executed but before any actual work began pursuant to the contract. Appellants contend that this is sufficient to satisfy the requirements of the MCC. The question, therefore, is whether strict or substantial compliance with the MCC is required.

In determining whether strict or substantial compliance with a statute is required, we must look to the legislative purpose behind the statute. *See Blackwell v. City Council for City of Seat Pleasant*, 94 Md.App. 393, 405, 617 A.2d 1110 (1993) ("We agree that while compliance is desired, it is not always mandatory. Substantial compliance, however ... is required."). If the legislative purpose may be accomplished by something less than strict compliance with the statutory language, substantial compliance will be sufficient to find compliance with the statute's directives. *See Conaway v. State*, 90 Md.App. 234, 242–43, 600 A.2d 1133 (1992). Nevertheless, when the legislative purpose may only be accomplished through a strict compliance requirement, strict compliance with the statutory language will be required. *See Butler v. Tilghman*, 350 Md. 259, 268, 711 A.2d 859 (1998).

"The proper interpretation of the registration provisions is one which carries out the legislative intent and gives meaning

to every part of the statute without producing harsh and unrealistic results." *Jones v. Short,* 696 P.2d 665, 667 (Alaska 1985) (footnotes omitted). For example, in *Jones,* the plaintiff was a general contractor whose insurer, without his knowledge, failed to renew his registration certificate.[1] During the lapse in registration, the plaintiff contracted to perform work in violation of the statute. The Alaska Supreme Court reversed the trial court's grant of summary judgment against Jones, and remanded the case to determine if he had substantially complied with the statute. In doing so, the court held that substantial compliance with the regulatory statute was sufficient, and stated that the compliance would be considered substantial if it "affords the public the same protection that strict compliance would offer." *Id.* at 668 n. 10.

The Arizona Supreme Court reached a similar result in *Aesthetic Property Maintenance, Inc. v. Capitol Indem. Corp.,* 183 Ariz. 74, 900 P.2d 1210 (1995). In *Capitol Indemnity,* a contractor failed to renew its license when its renewal application was inadvertently sent to the wrong address. An Arizona statute provided that "[n]o contractor ... [may] commence or maintain any action in any court of the state ... [without showing it was] a duly licensed contractor when the contract sued upon was entered into...." *Id.* at 1212 (quoting A.R.S. § 32–1153). As a result, the trial court held that the contractor could not maintain a suit against a surety for the balance due on a contract it executed during the period its license had lapsed. The Arizona Supreme Court reversed and held that substantial compliance was sufficient. The court reasoned "whether substantial or strict compliance is required is largely a question of which test best promotes [the] legislative purpose." *Id.* at 1213. The court found that the purpose of the

---

1. At the time, Alaska had a licensing statute similar to the MCC. The statute provided, in part, that "[i]t is unlawful for a person to submit a bid or work as a contractor until that person has been issued a certificate of registration by the Department of Commerce and Economic Development." *Jones,* 696 P.2d at 667 n. 1 (quoting AS 08.18.011). A contractor who violated the statute was forbidden from bringing an action based on a contract executed without the proper registration. *See id.* (citing AS 08.18.151) (footnote omitted).

statute was to "protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Id.* As a result, the court found that the contractor "remained financially responsible by keeping current its surety bond, workers' compensation insurance, liability insurance, and financial documents" and that the surety was not prejudiced by the contractor's failure to strictly comply with the licensing requirement. *Id.* at 1214.

 We hold that substantial compliance with the MCC licensing requirements is sufficient for a builder to maintain a cause of action. As discussed above, the MCC is a regulatory statute designed to protect the public from financially irresponsible contractors. In order to ensure the public is protected, an applicant is required to provide information "as the County Executive requires by executive regulations." MCC 31C–2(a)(3)b. A contractor who fails to obtain the required license will not be able to obtain the requisite building permit, *see* MCC 31C–2(d), and will be subject to criminal and civil penalties for failure to abide by the licensing requirements. *See* MCC 31C–13.[2] Clearly, the statutory scheme provides strong incentives to comply and will protect the public from unscrupulous builders.

 As exemplified by *Jones* and *Capitol Indemnity*, circumstances may arise where a financially responsible and otherwise qualified builder fails to strictly comply with the licensing requirements. To deny such a builder access to the courts *per se* will lead to a harsh and inequitable result in the instances where a builder completes the project in a professional manner. For this reason, we agree with those jurisdictions that have found that substantial compliance with builder's licensing requirements is sufficient. *See Capitol Indem.,* 900 P.2d at 1214 (citing cases); *McNairy v. Sugar Creek*

---

**2.** The MCC provides that a builder "is subject to punishment for a class A violation under section 1–19" of the MCC for violation of the MCC. Section 1–19 provides the maximum criminal penalty of $1000 fine and six months imprisonment, and a maximum civil penalty of $500 for the initial offense and $750 for repeat offenses. *See* MCC 1–19.

*Resort, Inc.,* 576 So.2d 185, 187 (Ala.1991); *Latipac, Inc. v. Superior Court of Marin County,* 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564, 567 (1966) ("If the facts clearly indicate that the contractor has 'substantially' complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempts to escape liability."); *Coleman v. Anderson,* 620 S.W.2d 77, 79 (Tenn.1981); *Murphy v. Campbell Inv. Co.,* 79 Wash.2d 417, 486 P.2d 1080, 1083 (1971).

 In the instant case, we remand to the circuit court for a determination of whether appellants substantially complied with the MCC. The trial court should determine whether the purpose of the statute, to protect the public from unscrupulous and financially irresponsible contractors, has been met. In determining whether there was substantial compliance, courts in other jurisdictions have looked at a number of factors, including: (1) whether the contractor held a valid license at the time of contracting; (2) whether the contractor readily secured a license; and (3) the responsibility and competence of the contractor. *See Latipac,* 49 Cal.Rptr. 676, 411 P.2d at 568–70. Although "each factor need not be present … 'the true test is whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute.'" *Capitol Indem.,* 900 P.2d at 1213 (quoting *Koehler v. Donnelly,* 114 N.M. 363, 838 P.2d 980, 982 (1992)).

In addressing these factors, we note that appellants did not have a license at the time the contract was executed. This factor weighs against a finding of substantial compliance. The court should, however, determine whether appellants knowingly ignored the licensure requirements. "If so, this is fatal to a claim of substantial compliance." *Id.* at 1214. Additionally, the court should consider whether appellants acted immediately to remedy their noncompliance upon receiving notice of the statutory violation.

Further, the court should consider whether appellees were prejudiced by appellants' failure to comply with the statute. *See id.* In doing so, the court should determine when appel-

lees became aware of appellants' violation. If appellees continued to allow appellants to perform, and accepted appellants' performance pursuant to the contract with knowledge of the statutory violation, they will be deemed to have ratified the contract. *See McNairy,* 576 So.2d at 187–88.

Finally, in considering whether appellants were financially responsible contractors, the court should determine whether appellants "maintain[ed] ... liability insurance, surety bond, workers' compensation insurance, and any other requirement imposed" by law. *Capitol Indem.,* 900 P.2d at 1214. The existence of these safeguards weighs in favor of finding substantial compliance, as they show financial responsibility and offer protection to the public.

### c.

### Violation of the Custom Homes Protection Act

Appellants also contend that the trial court erred when it held the contract was unenforceable because appellants failed to comply with the Act. Appellants admit that the contract does not comply with the Act. Nevertheless, appellants argue that the contract should be enforced because the Act is a "consumer protection law and a violation of the Act is made an unfair or deceptive trade practice ... [and] the Legislature ... made full provision for the consequence of noncompliance."

The Act requires a builder of custom homes to provide a number of disclosures to the buyer. Specifically, the Act states:

Every custom home contract between a custom home builder and the buyer must be in writing. The custom home contract shall:

(1) Include a draw schedule that shall be set forth on a separate sheet ... that shall be separately signed by the buyer and the [builder];

(2) Identify to the extent known the names of the primary subcontractors who will be working on the custom home;

 (3) Expressly state that any and all changes that are to be made to the contract shall be recorded as 'change orders' that specify the change in the work ordered and the effect of the change on the price of the house;

 (4) Set forth in bold type whether or not the vendor or builder is covered by a warranty program ...;

 (5) Require the vendor or builder to deliver to the purchaser within 30 days after each progress payment a list of the subcontractors, suppliers, or materialmen who have provided more than $500 of goods or services to date and indicate which of them have been paid by the [builder]; and

 (6) Require that the [builder] provide waivers of liens from all applicable subcontractors, suppliers, or materialmen within a reasonable time after the final payment for the goods or services they provide.

RP § 10–505. Additionally, under section 10–506 of the Act, a custom home builder "must include in each custom home contract a disclosure concerning a buyer's risk under mechanics' lien laws." RP § 10–506(a). A builder who violates these sections is subject to a number of penalties, and a violation constitutes "[a]n unfair or deceptive trade practice" under the Consumer Protection Act. RP § 10–507.

 Appellants concede that the contract does not "in any way compl[y] with the disclosure directives of the [Act]." Appellants contend, however, that the contract should not be rendered void and unenforceable because penalties for violation of the Act are provided in the statute.

 A contract is illegal "if either the formation or the performance thereof is prohibited by constitution or statute." *Thorpe v. Carte*, 252 Md. 523, 529, 250 A.2d 618 (1969) (citation omitted). Nevertheless, not all contracts that violate a statute are necessarily invalid. As the Court of Appeals has recognized:

 'before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition

and a penalty only for doing a thing which it forbids, ... the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not so to be. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that is not to be taken as granted that the Legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice.'

*Beard v. American Agency Life Ins. Co.*, 314 Md. 235, 255, 550 A.2d 677 (1988) (quoting *Lester*, 33 Md. at 564).

The Consumer Protection Act provides both public and private remedies for consumers. *See* Md.Code (1975, 1990 Repl. Vol.), § 13–401 of the Commercial Law Article ("CL"). For a private enforcement action, CL section 13–408 provides, in pertinent part:

(a) *Actions authorized.*—In addition to any action brought by the Division or Attorney General authorized by this title ... any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

(b) *Attorney's fees.*—Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

*Id.* at § 13–408.

In *Hallowell*, in addition to claiming that the violation of a licensing requirement rendered their lease unenforceable, the tenants contended that their lease was unenforceable under the Consumer Protection Act. The tenants, however, did not dispute that the property was acceptable to them during their occupancy, nor that the landlord made minor repairs as needed. The tenants claimed that the lack of licensure and the landlord's failure to inform them of the lack of licensure constituted an unfair and deceptive trade practice. *See Hallowell*, 328 Md. at 145, 613 A.2d 964.

The Court of Appeals held that the mere fact that the required license was not obtained does not entitle a consumer in a private action to damages. Rather, the Court held that "the General Assembly intended that a plaintiff pursuing a private action under the [Consumer Protection Act] prove actual 'injury or loss sustained.'" *Id.* at 151, 613 A.2d 964 (quoting *Golt v. Phillips,* 308 Md. 1, 12, 517 A.2d 328 (1986)). Writing for the Court, Judge Karwacki reasoned:

awarding full restitution of the rent paid by the tenants who offered no proof of actual injury or loss would be in the nature of a punitive remedy, merely serving to penalize the [landlord] for their failure to obtain a license for the property and to serve as a deterrent to similar conduct on the part of landlords generally. Section 13–408(a) was not intended to punish the landlord or set an example for similar wrong-doers. Rather the damages due to the consumer under § 13–408(a) are for 'injury and loss'—such as will compensate the injured party for the injury sustained due to the defendant's acts and for indirect consequences of such acts.

*Id.* at 153–54, 613 A.2d 964 (citation omitted).

We find *Hallowell* applicable to the present controversy. In the instant case, appellants failed to abide by the provisions of the Act. The Consumer Protection Act provides remedies for such a violation. Nevertheless, to receive protection under the Consumer Protection Act, appellees must show they were actually injured by appellants' violation of the Act. The contract between appellants and appellees will not be rendered unenforceable without such proof. To hold otherwise would potentially allow appellees to be unjustly enriched by receiving protection from appellants' petition for a mechanics' lien when appellees suffered no injury or damage. We, therefore, remand this case to the circuit court for a determination of whether appellees suffered actual damages as a result of appellants' failure to comply with the Act.

**JUDGMENT REVERSED; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**